UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARY GRACE MAGTOLES, AIRA C. TAN,
ANA MYRENE ESPINOSA, and ANA MERVINE :
ESPINOSA, individually and on behalf of all others
similarly situated,                                              :

                    Plaintiffs,         :        **CLASS ACTION COMPLAINT**

               -vs-          :        Plaintiffs Demand a Jury Trial

UNITED STAFFING REGISTRY, INC. d/b/a     :
United Home Care, and BENJAMIN H. SANTOS,
                          :
                Defendants.
----------------------------------------------------------------X

Plaintiffs MARY GRACE MAGTOLES, AIRA C. TAN, ANA MYRENE ESPINOSA,

and ANA MERVINE ESPINOSA, by their undersigned attorneys, as and for their complaint

against defendants UNITED STAFFING REGISTRY, INC. d/b/a United Home Care and

BENJAMIN H. SANTOS, allege on behalf of themselves and all others similarly situated, as

follows:

1.      This is an action for damages, injunctive relief, declaratory relief, and other

remedies for violations of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1589 *et*

*seq.*, and for breach of contract, fraud, and unjust enrichment under New York law.

2.      Defendants are foreign labor recruiters who have recruited more than 100 nurses

and other health care professionals from the Philippines to work for them in this District under

contracts of indentured servitude.  The defendants' standard employment contract contains

draconian penalties designed to keep Filipino health care professionals working for them and

their clients, including: (a) a $90,000.00 indenture that the health care professional must either

pay or work off before she will be permitted to stop working; (b) a non-compete penalty that

purports to prohibit the health care professional from working in the healthcare field anywhere in the United States for a period of three years if she fails to pay or work off the $90,000.00 indenture; and (c) an express, written threat that the defendants will report the health care professional to Immigration and Customs Enforcement (ICE) and have her deported if she stops working before she pays or works off the $90,000.00 indenture.

3.      While the defendants characterize the $90,000.00 indenture as "liquidated damages," there is no basis for this claim. The defendants pay nothing towards the recruitment, visa applications, or training of the health care professionals. Indeed, the defendants not only require the health care professionals to pay all of these costs, but also charge them for other expenses including labor certification fees that the employer is required by law to pay and may not pass on to the employee.

4.      Once the Filipino health care professionals begin working in the United States, the defendants refuse to pay them for all the hours they work or the wages required by their employment contracts and the immigration laws. To keep the health care professionals from leaving, the defendants threaten them with serious harm, including enforcement of the draconian penalties in the employment contract and the threat to have them deported.

5.      On behalf of themselves and all other Filipino healthcare professionals who have been employed by defendants since April 5, 2011, plaintiffs seek a judgment against each defendant, jointly and severally, for: compensatory and punitive damages for violations of the TVPA; compensatory damages for breach of contract and unjust enrichment; compensatory and punitive damages for fraud; pre- and post-judgment interest at the statutory rate of 9% on all damages awarded for violations of New York laws; an injunction prohibiting the defendants from threatening to enforce or enforcing the indenture and non-compete clauses in the

employment contracts; a declaration that the indenture and non-compete clauses are unenforceable under the TVPA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a) and the parties' employment contracts; and such other relief as the Court deems just and proper.

## Jurisdiction and Venue

6.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1595(a) (civil trafficking).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

7.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District.

## The Parties

8.       Plaintiff MARY GRACE MAGTOLES is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants.  She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

9.       Plaintiff AIRA C. TAN is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants.  She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

10.       Plaintiff ANA MYRENE ESPINOSA is a Registered Nurse licensed to practice in the State of New York and an employee of the defendants.  She is a citizen of the Republic of the Philippines and Belgium, and she resides in Queens County, New York.

11.       Plaintiffs Mary Grace Magtoles, Aira C. Tan, and Ana Myrene Espinosa are referred to herein as the "Nurse Plaintiffs."

12. Plaintiff ANA MERVINE ESPINOSA is a Physical Therapy Aide licensed to practice in the State of New York. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

13. Defendant UNITED STAFFING REGISTRY, INC. d/b/a United Home Care ("United Staffing") is a corporation organized under the laws of the State of New York with a principal place of business 77-04 Broadway, Elmhurst (Queens County), New York.

14. Defendant BENJAMIN H. SANTOS ("Santos") is the owner, President, and Chief Executive Officer of defendant United Staffing. Upon information and belief he is a resident of Queens County, New York.

15. Defendant Santos exercised complete domination and control of defendant United Staffing in respect to the conduct alleged in this complaint, including violations of the Trafficking Victims Protection Act designed to coerce the continued performance of plaintiffs and other Filipino health care professionals under their employment contracts notwithstanding the defendants' failure to pay the health care professionals for all hours worked at the wages required by their contracts and the immigration laws.

16. Defendant Santos used his complete domination and control of defendant United Staffing to commit wrongs against plaintiffs and other Filipino health care professionals, including violations of the Trafficking Victims Protection Act.

17. Defendants United Staffing and Santos are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

**Facts Common to All Claims**

18.     For more than 10 years, defendants United Staffing and Santos have recruited Filipino health care professionals to work for their staffing agency in New York. Throughout this time, the defendants have required the Filipino health care professionals to execute a standard employment contract.

19.     Plaintiff Mary Grace Magtoles signed the defendants' standard employment contract to work for them in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

20.     Plaintiff Aira C. Tan signed the defendants' standard employment contract to work for them in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

21.     Plaintiff Ana Myrene Espinosa signed the defendants' standard employment contract to work for them in New York. The contract was counter-signed by defendant Santos as President and CEO of defendant United Staffing.

**A. Defendants' Pattern and Practice of Paying Less Than the
Prevailing Wages Required by the Employment Contracts**

22.     The defendants' standard employment contract provides that the health care professionals will be paid "prevailing wages" for a Registered Nurse ("RN") based on the location of the hospital or health care facility where the nurse is assigned.

23.     Plaintiff Mary Grace Magtoles began working for the defendants as an RN at the Meadowbrook Care Center in Freeport, Nassau County, New York, in February 2019.

24.     In November 2019, plaintiff Magtoles was assigned to work as an RN at Regal Heights Rehabilitation and Health Care Center in Jackson Heights, Queens County, New York.

25.     The prevailing wage for an RN in Queens County was $32.21 per hour as determined by the United States Department of Labor.  In July 2020, the prevailing wage increased to $33.49 per hour.

26.     Defendants' paid plaintiff Magtoles only $15.00 per hour for the first two weeks of employment at Regal Heights Rehabilitation and Health Care Center.

27.     Thereafter, defendants frequently paid plaintiff Magtoles a base wage that was less than the prevailing wage.

28.     At both locations, plaintiff Magtoles submitted time sheets to defendants showing the times she started and ended work each day.

29.     After plaintiff Magtoles submitted her time sheets, defendants subtracted one-half hour per day on her timesheets when they calculated the number of hours for which she would be paid.

30.     The deduction allegedly was for a half-hour break every day, but plaintiff Magtoles was not given any such breaks.

31.     Defendants failed to pay plaintiff Magtoles for one-half hour of work every day that she worked for them.

32.     Plaintiff Aira C. Tan began working for the defendants as an RN at the Meadowbrook Care Center in Freeport, Nassau County, New York, in January 2019.

33.     In November 2019, plaintiff Tan was assigned to work as an RN at Regal Heights Rehabilitation and Health Care Center in Jackson Heights, Queens County, New York.

34.     Defendants' paid plaintiff Tan only $15.00 per hour for the first two weeks of employment at Regal Heights Rehabilitation and Health Care Center.

35.     Thereafter, defendants frequently paid plaintiff Tan a base wage that was less than the prevailing wage.

36.     At both locations, plaintiff Tan submitted time sheets to defendants showing the times she started and ended work each day.

37.     After plaintiff Tan submitted her time sheets, defendants subtracted one-half hour per day on her timesheets when they calculated the number of hours for which she would be paid.

38.     The deduction allegedly was for a half-hour break every day, but plaintiff Tan was not given any such breaks.

39.     Defendants failed to pay plaintiff Tan for one-half hour of work every day that she worked for them.

40.     Plaintiff Ana Myrene Espinosa began working for the defendants as an RN at Regal Heights Rehabilitation and Health Care Center in Jackson Heights, Queens County, New York, in November 2019.

41.     Defendants' paid plaintiff Ana Myrene Espinosa only $15.00 per hour for the first two weeks of employment at Regal Heights Rehabilitation and Health Care Center.

42.     Thereafter, defendants frequently paid plaintiff Ana Myrene Espinosa a base wage that was less than the prevailing wage.

43.     At both locations, plaintiff Ana Myrene Espinosa submitted time sheets to defendants showing the times she started and ended work each day.

44.     After plaintiff Ana Myrene Espinosa submitted her time sheets, defendants subtracted one-half hour per day on her timesheets when they calculated the number of hours for which she would be paid.

45.     The deduction allegedly was for a half-hour break every day, but plaintiff Ana Myrene Espinosa was not given any such breaks.

46.     Defendants failed to pay plaintiff Ana Myrene Espinosa for one-half hour of work every day that she worked for them.

**B.  Defendants' Pattern and Practice of Illegally Charging Filipino Health Care Professionals for Labor Certification Costs and Attorneys' Fees**

47.     Defendants recruited plaintiff Ana Mervine Espinosa to work for them in New York as a Physical Therapy Aide and offered to sponsor her for an employment-based visa that would allow her to work for them in this country.

48.     The immigration laws and regulations require that an employer pay all the costs and attorneys' fees related to obtaining a labor certification to be used in connection with the employer's sponsorship of an individual for an employment-based visa.

49.     The immigration laws and regulations prohibit an employer from seeking or receiving payment of any kind for any activity related to obtaining a labor certification, including payment of the employer's attorneys' fees, whether as an incentive or inducement to filing, or as a reimbursement for costs incurred in preparing or filing a labor certification application. Payment includes, but is not limited to:  monetary payments; wage concessions, including deductions from wages, salary, or benefits; kickbacks, bribes, or tributes; in kind payments; and free labor.

50.     Defendants' manager, Ferdie Pascual, sought and received on behalf of the defendants payment from plaintiff Ana Mervine Espinosa for activity related to obtaining a labor certification, including payment of the defendants' attorneys' fees, as an incentive or inducement to filing, or as a reimbursement for costs incurred in preparing or filing a labor certification application.

51.     Pascual, acting on behalf of and with the authority of the defendants, told plaintiff Ana Mervine Espinosa that she was required to pay the costs of obtaining a labor certification, including the employer's attorneys' fees.

52.     Pascual and the defendants knew that this statement was false when it was made.

53.     Pascual, acting on behalf of and with the authority of the other defendants, told plaintiff Ana Mervine Espinosa that she did not have to retain a lawyer.

54.     Reasonably relying on the expertise of the defendants because of their superior knowledge and expertise in the area of U.S. immigration procedures, plaintiff Ana Mervine Espinosa paid the defendants $7,532.00 to obtain a labor certification, including payment of the employer's attorneys' fees.

### C. Defendants' Pattern and Practice of Threatening Serious Harm to Prevent Filipino Health Care Professionals from Leaving Their Employ

55.     The defendants have engaged in a deliberate scheme, pattern and plan intended to cause plaintiffs and other Filipino health care professionals to believe that they would suffer serious harm if they tried to leave the defendants' employ or find other employment.

#### *1.     Defendants' Illegal $90,000.00 Indenture*

56.     The defendants' standard employment contract provides that the Filipino health care professionals cannot stop working until they either pay or work off a $90,000.00 indenture disguised as "liquidated damages."

57.     The $90,000.00 indenture is designed to coerce the health care professionals into continuing their employment with the defendants.

58.     The amount of the $90,000 indenture is disproportionate to the actual costs incurred by the defendants.

59.     The $90,000 indenture is disproportionate to the compensation paid to the Filipino health care professionals.

60.     The purpose of the $90,000.00 indenture is not to compensate defendants for actual or potential damages.

61.     The purpose of the $90,000.00 indenture is to obtain and provide plaintiffs' labor and services to defendants and their clients.

62.     The purpose of the $90,000.00 indenture is to deter plaintiffs from leaving their employment with defendants.

63.     Defendants were and are able to calculate the amount of actual damages they would suffer in the event a Filipino health care professional breached the employment contract.

64.     Plaintiffs reasonably feared that defendants would sue them for the $90,000 indenture and other provisions in the employment contract.

### 2.     *The Nationwide, Three-Year Non-Compete Penalty*

65.     The defendants' standard employment contract includes a non-compete penalty that applies only if the health care professional leaves before paying or working off the $90,000.00 indenture.  In that event, the contract purports to prohibit the health care professional from working as a nurse, practicing nursing, working as a physician assistant, or otherwise practicing the art of/science of nursing anywhere in the United States for a period of three years.

66.     The temporal, geographic, and substantive scope of the non-compete penalty creates an unreasonable restraint on plaintiffs' ability to practice their profession.

67.     The temporal, geographic, and substantive scope of the non-compete penalty is broader than necessary to protect any legitimate business interest of defendants.

68.     The purpose of the non-compete penalty is not to protect any legitimate business interest of defendants.

69.     The purpose of the non-compete penalty is to obtain and provide plaintiffs' labor and services to defendants and their clients.

70.     The purpose of the non-compete provisions is to deter plaintiffs from leaving their employment with defendants.

71.     Plaintiffs reasonably feared that potential employers would not hire them as long as defendants might sue them and any potential employers for violation of the three-year, nationwide non-compete penalty in the employment contract.

72.     Plaintiffs reasonably feared that defendants would sue them for breach of the non-compete penalty in the employment contract if they tried to practice their profession with any other employer in the United States

73.     Plaintiffs reasonably feared that the cost of defending themselves against the defendants' threatened legal actions would cause them to suffer serious harm.

74.     The $90,000.00 indenture and non-compete penalty are part of a contract of adhesion that defendants obtained as a result of unequal sophistication and bargaining power.

### 3.     *Defendants' Threats to Have Plaintiffs Deported*

75.     The defendants' standard employment contract threatens the Filipino health care professionals with deportation if they stop working for the defendants before paying or working off the $90,000.00 indenture.  Specifically, the defendants threaten that, if a Filipino health care professional leaves before paying or working off the $90,000.00 indenture, they will be reported "to the United States Citizenship and Immigration Services (USCIS) and the Immigration and Customs enforcement [sic] (ICE)," and that "such report may lead to the termination of the

Permanent Resident Card (Green Card) and deportation of the EMPLOYEE from the United States."

76. Upon information and belief, the defendants have brought and threatened to bring baseless lawsuits against Filipino health care professionals to induce all Filipino health care professionals to continue working for the defendants.

77. The defendants' baseless and abusive lawsuits against Filipino health care professionals are part of a longstanding pattern and practice designed to induce fear and prevent Filipino health care professionals from seeking other employment.

78. Upon information and belief, the defendants' actual and threatened legal actions were pursued for the purpose of coercing Filipino health care professionals to continue working for the defendants.

79. Upon information and belief, the defendants' actual and threatened legal actions were pursued with the intent to cause all Filipino health care professionals to believe that they would suffer serious psychological, financial or reputational harm if they did not continue working for defendants.

80. As a direct and proximate result of the defendants' wrongful conduct, plaintiffs and other Filipino health care professionals continued working for the defendants at rates of pay less than the prevailing wages required by their employment contracts.

### 4. Defendants' Use of False Statements and Illegal Fees to Prevent Plaintiff Ana Mervine Espinosa from Ending Their Relationship

81. Defendants recruited plaintiff Ana Mervine Espinosa with a number of promises, including a promise to sponsor her for an employment-based visa that would allow her to work for them in this country.

82. Defendants told plaintiff Ana Mervine Espinosa that she was required to pay the costs of a labor certification process, including for the employer's attorneys' fees.

83. Defendants told plaintiff Ana Mervine Espinosa that she did not need her own lawyer.

84. Defendants told plaintiff Ana Mervine Espinosa that she would lose all the money she had paid to cover the cost of the labor certification process if she stopped working for them.

85. Upon information and belief, defendants made these statements with the intent of causing plaintiff Ana Mervine Espinosa to fear that she would lose thousands of dollars in labor certification and related attorneys' fees if she tried to end her employment relationship with the defendants.

86. Plaintiff Ana Mervine Espinosa reasonably feared that she would suffer serious financial, reputational, and other harms including the possibility of deportation if she ended her employment relationship with the defendants.

## **Class Action Claims**

87. Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all Filipino healthcare workers they recruited and employed. Plaintiffs therefore bring the claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

88. The class is comprised of all Filipino healthcare professionals who worked for the defendants at any time since April 5, 2011.

89. The class made be divided into two sub-classes:

a. The first sub-class (the "Nurse Sub-Class") is comprised of Filipino nurses who worked for defendants under employment contracts that contain a liquidated damages clause;

b. The second sub-class (the "H-1b Sub-Class") is comprised of Filipino health care professionals who paid defendants for the cost of a labor certification process.

90. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

91. The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

a. Numerosity: The potential members of the class are so numerous that joinder of all members of the class is impracticable.

b. Commonality: There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual members of the class. These common questions of law and fact include:

1. whether the liquidated damages clause in defendants' standard employment contract is unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994;

2. whether the liquidated damages clause in defendants' standard employment contract is an unenforceable penalty under New York law;

3.  whether the liquidated damages clause, by itself or in combination with the non-compete clause, constitutes a threat of "serious harm" within the meaning of the Trafficking Victims Protection Act;

4.  whether defendants engaged in a policy and practice of failing to pay Filipino healthcare professionals the agreed upon wages;

5.  whether defendants engaged in a policy and practice of failing to pay Filipino health care professionals for all the hours they worked;

6.  whether defendants engaged in a policy and practice of charging Filipino health care professionals for labor certification costs in violation of the immigration laws;

7.  whether defendants engaged in a policy and practice of using an unenforceable contract termination penalty to coerce Filipino healthcare professionals to continue working for them;

8.  whether defendants used the threat of losing thousands of dollars in labor certification fees to coerce Filipino healthcare professionals to continue working for them;

9.  whether defendants are liable to the class;

10. whether the class can be made whole by the payment of damages; and

11. whether defendant Santos is personally liable for damages sustained by class members.

c.  Typicality:  Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by the defendants' policies and practices described above.

d. Adequacy of Representation: Plaintiffs will fairly and adequately represent the interest of class members. Plaintiffs' counsel is competent and experienced in litigating complex employment class actions, including actions alleging violations of the TVPA.

92. Superiority: A class action is superior to other available means for fair and efficient adjudication of this controversy. Each class member has been damaged and is entitled to recovery because of defendants' illegal policies and practices. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF
BY ALL PLAINTIFFS AGAINST
ALL DEFENDANTS FOR VIOLATIONS OF THE
TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
18 U.S.C. § 1595**

93. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

94. The Trafficking Victims Protection Act ("TVPA") imposes liability on anyone who knowingly provides or obtains the labor or services of a person by means of threats of serious harm, the abuse or threatened abuse of law or legal process, or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm.

95. The TVPA defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the

16

surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

96.     Contract termination fees between $15,000 and $25,000 have been found to constitute a threat of serious harm as defined in the TVPA.

97.     Defendants knowingly provided and obtained the labor and services of plaintiffs by means of serious harm and threats of serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

98.     Defendants knowingly provided and obtained the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

99.     The TVPA defines an "abuse or threatened abuse of law or legal process" as the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

100.    Defendants knowingly provided and obtained the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including without limitation

the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants and to refrain from seeking employment elsewhere.

101. Defendants knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

102. Defendants knowingly recruited, transported, provided, and obtained plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

103. By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

104. Plaintiffs suffered damages as a direct and proximate result of defendants' conduct.

105. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

**SECOND CLAIM FOR RELIEF
BY ALL PLAINTIFFS AGAINST
ALL DEFENDANTS FOR CONSPIRING TO VIOLATE
THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
18 U.S.C. § 1594(b)**

106. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

107. Defendants United Staffing and Santos conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

108. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs by means of the abuse or threatened abuse of law or legal process, including

without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiffs to continue working for the defendants or to refrain from seeking employment elsewhere.

109. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs by means of serious harm and threats of serious harm to plaintiffs, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

110. Defendants United Staffing and Santos agreed to provide and obtain the labor and services of plaintiffs by means of a scheme, plan, or pattern intended to cause plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

111. Defendants United Staffing and Santos agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

112. Defendants United Staffing and Santos agreed to recruit, transport, provide, and obtain plaintiffs for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

113. Each of the defendants engaged in at least one overt act in furtherance of the conspiracy, including:

a. Defendant United Staffing required plaintiffs to execute contracts with unenforceable contract termination and non-compete provisions, and threatened to commence legal action to enforce these provisions, for the purpose of coercing plaintiffs to continue working;

b. Defendant Santos warned, cautioned, and threatened plaintiffs that they would be sued for the full contract termination penalty if they tried to stop working for the defendants.

114. Each of the defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny plaintiffs the compensation they were entitled to under their employment agreements and to coerce plaintiffs to continue working for the defendants and not to seek work elsewhere.

115. Plaintiffs suffered damages as a direct and proximate result of defendants' conspiracy.

116. Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

**THIRD CLAIM FOR RELIEF**
**BY ALL PLAINTIFFS AGAINST**
**ALL DEFENDANTS FOR ATTEMPTING TO VIOLATE**
**THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
**18 U.S.C. § 1594(a)**

117. Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

118. Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590.

119. Plaintiffs suffered damages as a direct and proximate result of defendants' attempts to violate 18 U.S.C. §§ 1589 and 1590.

120.     Plaintiffs are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### FOURTH CLAIM FOR RELIEF
### BY THE NURSE PLAINTIFFS
### AGAINST ALL DEFENDANTS
### FOR BREACH OF CONTRACT

121.     The Nurse Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

122.     The Nurse Plaintiffs entered into valid and binding employment contracts with defendants.

123.     The Nurse Plaintiffs substantially performed under the contracts.

124.     Defendants breached the contracts by failing to pay the Nurse Plaintiffs the prevailing wages required by their contracts.

125.     Defendants breached the contracts by failing to pay the Nurse Plaintiffs for all hours worked.

126.     The Nurse Plaintiffs suffered damages as a direct and proximate result of the breaches.

127.     The Nurse Plaintiffs are entitled to compensatory damages for breach of contract in amounts to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### BY THE NURSE PLAINTIFFS
### AGAINST ALL DEFENDANTS
### FOR A DECLARATORY JUDGMENT

128.     The Nurse Plaintiffs repeat and reallege each and every allegation set forth above as if fully restated herein.

129. The contract termination fee and non-compete clause are unenforceable under the TVPA.

130. The contract termination fee and non-compete clause are unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

131. The contract termination fee and non-compete clause are unenforceable under New York law.

132. The Nurse Plaintiffs have a definite and concrete dispute with defendants concerning the enforceability of the contract termination fee and non-compete clause.

133. The dispute touches the legal relations of parties having adverse legal interests.

134. The dispute is real and substantial.

135. The dispute admits of specific relief through a decree of a conclusive character.

136. The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### SIXTH CLAIM FOR RELIEF
### BY PLAINTIFF ANA MERVINE ESPINOSA
### AGAINST ALL DEFENDANTS
### FOR UNJUST ENRICHMENT

137. Plaintiff Ana Mervine Espinosa repeats and realleges each and every allegation set forth above as if fully restated herein.

138. Defendants have been enriched by soliciting and receiving $7,532.00 from plaintiff Ana Mervine Espinosa in violation of the immigration laws and regulations.

139. Defendants have been enriched at the expense of plaintiff Ana Mervine Espinosa.

140. It is against equity and good conscience to allow defendants to retain the payments they solicited and received in violation of the immigration laws and regulations.

## SEVENTH CLAIM FOR RELIEF
## BY PLAINTIFF ANA MERVINE ESPINOSA
## AGAINST ALL DEFENDANTS
## FOR FRAUD

141. Plaintiff Ana Mervine Espinosa repeats and realleges each and every allegation set forth above as if fully restated herein.

142. Defendants' manager, acting on behalf of and with the authority of the defendants, told plaintiff Ana Mervine Espinosa that she was required to pay the costs of obtaining a labor certification, including the employer's attorneys' fees.

143. That statement was false.

144. Defendants and their manager knew that the statement was false when it was made.

145. Upon information and belief, defendants had their manager make the statement with the intent of causing plaintiff Ana Mervine Espinosa to believe that she was required to pay the costs of obtaining a labor certification, including the employer's attorneys' fees.

146. Plaintiff Ana Mervine Espinosa reasonably relied on the defendants' statement.

147. Plaintiff Ana Mervine Espinosa suffered damages in amounts to be determined at trial as a result of the reliance.

### Jury Demand

148. Plaintiffs are entitled to and demand a jury trial.

### Prayer for Relief

**WHEREFORE** plaintiffs Mary Grace Magtoles, Aira C. Tan, Ana Myrene Espinosa, and Ana Mervine Espinosa request judgment against each defendant, jointly and severally, awarding them and all others similarly situated: compensatory and punitive damages for violations of the TVPA; compensatory damages for breach of contract and unjust enrichment;

compensatory and punitive damages for fraud; pre- and post-judgment interest at the statutory rate of 9% on all damages awarded for violations of New York laws; an injunction prohibiting the defendants from threatening to enforce or enforcing the indenture and non-compete clauses in the employment contracts; a declaration that the indenture and non-compete clauses are unenforceable under the TVPA, the Anti-Peonage Law, 42 U.S.C. § 1994, and New York law; an award of reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1595(a) and the parties' employment contracts; and such other relief as the Court deems just and proper.

Dated: New York, New York
     April 5, 2021

THE HOWLEY LAW FIRM P.C.

*/s John Howley*
By:_____
       John Howley
*Attorneys for Plaintiffs*
1345 Avenue of the Americas, 2nd Floor
New York, New York  10105
(212) 601-2728