UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

MARY GRACE MAGTOLES, AIRA C. TAN,
ANA MYRENE ESPINOSA, and ANA MERVINE
ESPINOSA, individually and on behalf
of all others similarly situated,

                                       **MEMORANDUM & ORDER**

                  Plaintiffs,          21-CV-1850 (KAM) (PK)

      - against -


UNITED STAFFING REGISTRY, INC. d/b/a
UNITED HOME CARE and BENJAMIN H. SANTOS,

             Defendants.

---------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Plaintiffs are citizens of the Republic of the Philippines who work as health care professionals in the New York area. Plaintiffs bring this putative class action against Defendants United Staffing Registry, Inc. and Benjamin H. Santos for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 *et seq.* The complaint also asserts individual claims for breach of contract, unjust enrichment, and fraud.

        Presently before the Court is Defendants' motion to dismiss the complaint for failure to state a claim. (ECF No. 29.) For the reasons set forth below, the court grants Defendants' motion to the limited extent that Plaintiff Ana Mervine Espinosa asserts claims under Section 1589 of the TVPA. The motion is otherwise denied in full.

**BACKGROUND**

**I.   Factual Background**

On a motion to dismiss, the court accepts the truth of all well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).  In addition to the complaint, the court may consider documents incorporated by reference into the complaint and matters of proper judicial notice and public record. *Id.* at 996.

A. The Defendants

Defendant Benjamin Santos is the owner, president, and chief executive officer of Defendant United Staffing Registry, Inc., a staffing agency that employs health care professionals. (ECF No. 1 ("Compl.") ¶¶ 14, 18.)  For more than ten years, Defendants have recruited Filipino health care professionals to work for United Staffing in the New York area.  (*Id.* ¶ 18.)

B. The Nurse Plaintiffs and Their Employment Contracts

In 2018 and 2019, Plaintiffs Mary Grace Magtoles, Aira C. Tan, and Ana Myrene Espinosa (collectively, the "Nurse Plaintiffs") each signed United Staffing's "standard employment contract" to work for the company as a registered nurse.  (*Id.* ¶¶ 19-21.)  Four provisions of the contracts are relevant to Plaintiffs' claims in this action.

*First*, the contracts included a "liquidated damages" provision, which Plaintiffs refer to as an "indenture." (*Id.* ¶ 56.) United Staffing's contracts required employees to perform at least 6,000 hours of work over the course of three years. (ECF No. 28-2 ("Magtoles Contract") at 2; ECF No. 28-3 ("Tan Contract") at 2; ECF No. 28-4 ("Ana Myrene Espinosa Contract") at 2.) If an employee left United Staffing before that time, she would be required to pay $15 in liquidated damages "for each hour or part of an hour not performed of the [6,000-hour] requirement." (*Id.*) For example, if an employee left after completing 2,000 hours of work over the course of two years, she would owe United Staffing $60,000 for the 4,000 remaining hours. Plaintiffs contend that the liquidated damages provision is unenforceable and exists only to coerce employees into continuing to work for United Staffing. (Compl. ¶¶ 56-64.)

*Second*, the contracts included a non-compete clause. If an employee left United Staffing before completing 6,000 hours of work over the course of three years, she would be prohibited from working as a nurse or physician's assistant. (Magtoles Contract at 2; Tan Contract at 2; Ana Myrene Espinosa Contract at 2.) The employee would further be prohibited from engaging or participating in any business that competed with United Staffing in the United States for a period of three years. (*Id.*) As with the liquidated damages provision, Plaintiffs assert that the non-

3

compete clause is unenforceable and exists only to coerce employees into continuing to work for United Staffing.  (Compl. ¶¶ 65-74.)

*Third*, the contracts provided that United Staffing would pay the Nurse Plaintiffs "a salary or wage that complies with the laws, rules, regulations[,] and prevailing wages depending on the location" where the nurse worked.  (Magtoles Contract at 3; Tan Contract at 3; Ana Myrene Espinosa Contract at 3.)  The complaint alleges that Defendants violated this provision by (1) deducting one half-hour each day for breaks that the Nurse Plaintiffs were not afforded (Compl. ¶¶ 29-31, 37-39, 44-46); and (2) otherwise paying the Nurse Plaintiffs less than the prevailing wage for registered nurses, which was $32.21 per hour in Queens County during 2019 and rose to $33.49 per hour in July 2020.  (*Id.* ¶¶ 25, 27, 35, 42.)  For example, during their first two weeks of work at the Regal Heights Rehabilitation and Care Center in Queens, New York, the Nurse Plaintiffs allegedly received only $15.00 per hour.  (*Id.* ¶¶ 26, 34, 41.)

*Fourth*, the contracts provide that, if the employee breaches the agreement, United Staffing "will report" a change in employment status to "appropriate government authorities," including the United States Citizenship and Immigration Services (USCIS) and Immigration and Customs Enforcement (ICE).  (Magtoles Contract at 3; Tan Contract at 3; Ana Myrene Espinosa Contract at 3.)  The contracts further warn that "such report may lead to the

4

termination of the Permanent Resident Card (Green Card) and deportation of EMPLOYEE from the United States." (*Id.*) In addition to this alleged "threat[]" of reporting and deportation (Compl. ¶ 75), Plaintiffs claim that Defendants "have brought and threatened to bring baseless lawsuits against Filipino health care professionals" to coerce them into continuing to work for United Staffing. (*Id.* ¶ 76; *see id.* ¶¶ 77-80.)

C. Plaintiff Ana Mervine Espinosa

Plaintiff Ana Mervine Espinosa is a licensed physical therapy aide. (*Id.* ¶ 12.) The complaint alleges that Defendants recruited her to work for United Staffing and offered to sponsor her for an employment-based visa. (*Id.* ¶ 47.) Under Department of Labor regulations, "[a]n employer must not seek or receive payment of any kind for any activity related to obtaining [a] permanent labor certification" for foreign workers. 20 C.F.R. § 656.12(b).

According to the complaint, however, Defendants' manager – Ferdie Pascual – told Plaintiff Ana Mervine Espinosa that she was required to pay the costs of obtaining a labor certification, including attorney's fees, and did not have to retain a lawyer. (Compl. ¶¶ 50-53.) Based on Mr. Pascual's representations, the complaint alleges that Ms. Espinosa paid Defendants $7,532.00 to obtain a labor certification. (*Id.* ¶ 54.)

## II.   Procedural History

Plaintiffs commenced this putative class action on April 6, 2021, bringing claims for violations of the TVPA, conspiracy to violate the TVPA, and attempting to violate the TVPA.  (Compl. ¶¶ 93-120.)   The Nurse Plaintiffs also assert claims for breach of contract and declaratory judgment, and Plaintiff Ana Mervine Espinosa brings claims for unjust enrichment and fraud.  (*Id.* ¶¶ 121-47.)   Plaintiffs seek compensatory and punitive damages, attorney's fees, and declaratory and injunctive relief.  (*Id.* at 23-24.)

On June 21, 2021, Defendants filed a letter requesting a pre-motion conference for their motion to dismiss the complaint for failure to state a claim.  (ECF No. 15.)  Plaintiffs responded in opposition (ECF No. 18), and the Court held a pre-motion conference on June 29, 2021.  (6/29/21 Minute Entry.)   The motion is now fully briefed and ripe for decision.

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citation omitted).

**DISCUSSION**

**I.   The Nurse Plaintiffs' TVPA Claims**

The TVPA provides a private right of action to persons who have been subjected to forced labor. 18 U.S.C. § 1595(a). A defendant is liable for forced labor when he "knowingly provides or obtains the labor or services of a person" by any of the following means:

> (1)  by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2)  by means of serious harm or threats of serious harm to that person or another person;
> (3)  by means of the abuse or threatened abuse of law or legal process; or
> (4)  by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

*Id.* § 1589(a).

Plaintiffs' complaint invokes the second, third, and fourth subsections of Section 1589(a). (Compl. ¶¶ 97-98, 100.) The court considers each in turn.

A. Serious Harm Under Section 1589(a)(2)

First, the Nurse Plaintiffs claim that the liquidated damages provision, non-compete clause, and immigration notification provision in their contracts threaten serious harm under the TVPA.  (Compl. ¶¶ 55, 57, 69-70, 75, 78, 95-96, 103; *see also* ECF No. 30 (Pls.' Opp'n) at 6-12.)  The term "serious harm" encompasses "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm . . . ."  18 U.S.C. § 1589(c)(2).  The harm must be "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  *Id.*

***Liquidated Damages Provision.***  The complaint sufficiently and plausibly alleges that the liquidated damages provision threatens serious harm to the Nurse Plaintiffs.  In *Paguirigan v. Prompt Nursing Employment Agency LLC*, a case that Defendants assert is distinguishable, Judge Gershon considered similar TVPA claims brought by a plaintiff who was recruited from the Philippines to work as a nurse in the United States.  At the motion to dismiss stage, Judge Gershon concluded that a $25,000 liquidated damages provision threatened serious harm under the TVPA.  286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017); *see also, e.g.*, *Macolor v. Libiran*, 2016 WL 1488121, at *4 (S.D.N.Y. Mar. 25, 2016) ($20,000 liquidated

8

damages provision threatened serious harm to physical therapist), *report and recommendation adopted*, 2016 WL 1453039 (S.D.N.Y. Apr. 13, 2016); *Javier v. Beck*, 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) ($15,000 confession of judgment threatened serious harm to physical therapy rehab manager).

Here, United Staffing's contracts impose $15 in liquidated damages for each hour or part of an hour of the 6,000-hour requirement that an employee may fail to complete. (*E.g.*, Magtoles Contract at 3.) Thus, if a nurse left United Staffing before completing any work, she would owe $90,000; if the nurse left after completing 2,000 hours of work over the course of one year, she would owe $60,000; and if the nurse left after completing 4,000 hours of work over the course of two years, she would still owe $30,000. These numbers exceed the amounts that have been found to threaten serious harm to similarly situated plaintiffs in *Paguirigan*, *Malacor*, and *Javier* — namely, foreign citizens who came to the United States to work as healthcare professionals.

When assessing serious harm under the TVPA, "it is not the amount of liquidated damages, per se, that controls the analysis." *Dale Carmen v. Health Carousel, LLC*, 2021 WL 2476882, at *7 (S.D. Ohio June 17, 2021). "Rather, what matters is whether the specified liquidated damages in a given case rise to the level of serious harm considering all of the surrounding circumstances," including "the employee's pay rate" and "the enforceability of the

[contractual] term." *Id.* (citing *Paguirigan*, 286 F. Supp. 3d at 439; *Javier*, 2014 WL 3058456, at *6). These factors also support a finding that the complaint plausibly alleges that the liquidated damages provision threatens serious harm to the Nurse Plaintiffs.

With respect to pay rate, the complaint alleges that the highest prevailing wage during the Nurse Plaintiffs' employment was $33.49. (Compl. ¶ 25.) Assuming that a nurse worked 2,000 hours in a year, she would earn $66,980. In other words, a nurse who left United Staffing after one year would owe approximately a full year's salary in liquidated damages. *See Javier*, 2014 WL 3058456, at *6 (complaint plausibly alleged serious harm where liquidated damages amount "represented six months' gross wages").

With respect to enforceability, "a foreign citizen recruited to a job opportunity in this country may not have a deep (or any) understanding of the legal system or their rights under that system . . . ." *Dale Carmen*, 2021 WL 2476882, at *6. "As a result, the *in terrorem* effect of [an unenforceable contractual] provision may well provide a form of 'compulsion' for that foreign citizen to remain in their job, no matter how distasteful that job has become to them." *Id.* Here, Plaintiffs contend that the liquidated damages provision is an unenforceable penalty under New York law, whereas Defendants argue that the provision is

enforceable.    (Compl. ¶ 113(a); Pls.' Opp'n at 8-12; *see* ECF No.
29 ("Defs.' Mem.") at 20.)[1]

Because the enforceability of the liquidated damages
provision depends on the facts and circumstances surrounding the
contract, *see JMH Holding Corp. v. Congress Fin. Corp.*, 828 N.E.2d
604, 609 (N.Y. 2005), the court finds that it would be
inappropriate to make a final determination on this question at
the pleading stage.    In *Paguirigan*, for instance, Judge Gershon
found that a liquidated damages provision was unenforceable on
summary judgment, and the Second Circuit affirmed that finding on
appeal.    2019 WL 4647648, at *8 (E.D.N.Y. Sept. 24, 2019), *aff'd
in relevant part and appeal dismissed in part*, 827 F. App'x 116
(2d Cir. 2020).

Nevertheless, when evaluating motions to dismiss under
the TVPA, it is appropriate to make a preliminary assessment as to

---

[1] The Nurse Plaintiffs' contracts do not contain a choice of law clause,
providing only that the contracts "shall be governed by and construed in
accordance with the law." (*E.g.*, Magtoles Contract at 6.)    Applying New York's
choice of law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,
496-97 (1941), the court concludes that the substantive law of New York governs.
New York law applies a "center of gravity" approach to contract disputes, under
which courts may consider the place of contracting, the places of negotiation
and performance, the location of the subject matter, and the domicile or place
of business of the contracting parties. *Lazard Freres & Co. v. Protective Life
Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (citation omitted).    Here, the
Nurse Plaintiffs were to perform under the contracts in New York; the contracts
were executed by United Staffing in New York; and United Staffing is based in
New York.    (Compl. ¶¶ 13, 19-21; *see, e.g.*, Magtoles Contract at 7.)    In
addition, the fact that Defendants do not argue for application of another
state's law is reason enough to apply New York law. *See, e.g., USHA Holdings,
LLC v. Franchise India Holdings, Ltd.*, 2015 WL 13741743, at *8 (E.D.N.Y. Sept.
11, 2015).

whether the complaint pleads sufficient facts to support a finding that a liquidated damages provision is an unenforceable penalty. *See Dale Carmen*, 2021 WL 2476882, at *9 (denying motion to dismiss after determining that "discovery is necessary" to assess enforceability of liquidated damages provision); *see also Paguirigan*, 286 F. Supp. 3d at 439 (considering the fact that "the New York Supreme Court found the [liquidated damages provision] unenforceable").[2] In this respect, the applicable standard mirrors that employed by courts when evaluating a motion to dismiss a request for a declaratory judgment that a liquidated damages provision is unenforceable. *See, e.g.*, *Loyal Bank Ltd. v. Mastercard Int'l Corp.*, 2021 WL 3604891, at *6 (S.D.N.Y. Aug. 13, 2021).

Under New York law, "[l]iquidated damages are an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." *Tr. of Columbia Univ. in City of N.Y. v. D'Agostino Supermarkets, Inc.*, 162 N.E.3d 727, 731 (N.Y. 2020) (quotations and citation omitted). "Liquidated damages that constitute a penalty, however, violate public policy, and are

---

[2] Although the New York Supreme Court found the liquidated damages provision at issue in *Paguirigan* unenforceable, the state case ultimately settled before trial and the issuance of a final judgment. As a result, Judge Gershon did not consider the New York Supreme Court's decision to be *res judicata*, and independently found the provision unenforceable on summary judgment as discussed above. *Paguirigan*, 2019 WL 4647648, at *8 n.6.

unenforceable." *Id.* (citation omitted). "New York courts will construe a purported liquidated damages provision strictly, and where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty and disallowed." *Paguirigan*, 2019 WL 4647648, at *8 (quotations and citation omitted).[3]

*First*, the Nurse Plaintiffs allege sufficient facts to support a finding that the liquidated damages provision is plainly disproportionate to United Staffing's damages. As discussed above, a nurse who left United Staffing after one year would owe approximately a full year's salary. *See, e.g.*, *Paguirigan*, 2019 WL 4647648, at *8 (finding unenforceable penalty on summary judgment where "it would have taken [a nurse] almost nine months to pay off the liquidated damages amount"). By contrast, the complaint alleges that Defendants suffered little in damages when a nurse left United Staffing. According to the complaint, Defendants did not pay towards the recruitment, visa applications, or training of United Staffing employees. (Compl. ¶ 3.) Instead

---

[3] Defendants argue that the Nurse Plaintiffs cannot state a TVPA claim based on the liquidated damages provision because they do not allege that they were coerced into signing their contracts. (Defs.' Mem. at 19-20.) But coercion is not the only ground on which a court may refuse to enforce a contract. *See Dale Carmen*, 2021 WL 2476882, at *6 (rejecting the argument "that a freely entered contract, because it is voluntary, can *never* serve as the basis for a TVPA claim"). As relevant here, New York law clearly recognizes that a liquidated damages provision that operates as a penalty contravenes public policy and is therefore unenforceable.

of charging employees for whatever expenses that United Staffing did incur, however – or charging employees for the costs of finding a replacement – the liquidated damages provision would allow United Staffing to employ a replacement nurse for one year, essentially for free.

Second, the Nurse Plaintiffs allege sufficient facts to support a finding that United Staffing's damages are easily ascertainable. The complaint alleges that Defendants have recruited Filipino nurses for more than 10 years and are thus familiar with the costs associated with a nurse's breach of contract. (Compl. ¶¶ 18, 63.) "[H]aving recruited Filipino nurses for years, it would be surprising if [United Staffing] did not know what its . . . expenses would be." Paguirigan, 827 F. App'x at 120-21. Further, the complaint alleges that United Staffing had few expenses to estimate because the company "pa[id] nothing towards the recruitment, visa applications, or training of the health care professionals." (Compl. ¶ 3.) Whether discovery will bear out these allegations is a question for another day. At this stage, however, the court concludes that the Nurse Plaintiffs have pleaded sufficient facts to find that the liquidated damages provision is unenforceable and thus supports a plausible claim of serious harm under the TVPA.

**Non-Compete Clause.** The court also concludes that the non-compete clause contributes to a plausible allegation of

14

serious harm under the TVPA.  *See Dale Carmen*, 2021 WL 2476882, at
*6, *9 (finding that plaintiff adequately pleaded TVPA claim based
on non-compete clause, among other things).  Under the non-compete
clause, the Nurse Plaintiffs may not:

> 1. In any manner whatsoever, directly or indirectly, work
>    as a nurse, practice nursing, work as a physician's
>    assistant, or otherwise practice the art of/science of
>    nursing; or
> 2. Directly or indirectly operate, own, lease (as landlord
>    or tenant), engage or participate in as owner, partner,
>    employee, joint venturer, shareholder, director,
>    assignor, seller, transferor, or as sales or marketing
>    agent or otherwise, in, for or in connection with any
>    business which competes with the EMPLOYER within the
>    United States for a period of THREE (3) YEARS after the
>    EMPLOYEE severs his/her relationship with the EMPLOYER.

(*E.g.*, Magtoles Contract at 2.)

Defendants argue that the non-compete clause "allows any
of the Plaintiffs to work as a nurse or to operate, own or lease
any business, for as long as such work or business is not in
competition with United Staffing's business."  (Defs.' Mem. at 8-
9.)  The plain language of the clause, however, is not so limited.
The limitation that a future employer be in competition with United
Staffing in the United States – as well as the three-year time
limitation – appear to apply only to the clause's second
subsection.  The first subsection, on its face, prohibits former
employees from working as nurses without any limitation as to
duration, geography, or a future employer's status as a competitor.

Even if the court applied these limitations to the first subsection, however, the complaint alleges sufficient facts to support a finding that the non-compete clause is unenforceable. "Non-compete provisions are enforceable under New York law only if they are (1) reasonable in duration and geographic scope, (2) 'necessary to protect the employer's legitimate interests,' (3) 'not harmful to the general public,' and (4) 'not unreasonably burdensome to the employee.'" *Flatiron Health, Inc. v. Carson*, 2020 WL 1320867, at *19 (S.D.N.Y. Mar. 20, 2020) (quoting *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999)).

With respect to the first factor, New York courts have cast doubt on the enforcement of non-compete clauses extending over a wide geographic area for a period of several years, particularly when the employer's business is limited to a particular region. *See, e.g.*, *Reed Elsevier Inc. v. Transunion Holding Co., Inc.*, 2014 WL 97317, at *8 (S.D.N.Y. Jan. 9, 2014) (worldwide, 31-month non-compete unenforceable); *Yedlin v. Lieberman*, 102 A.D.3d 769, 770 (2d Dep't 2013) (non-compete covering the entire United States likely unenforceable); *Good Energy, L.P. v. Kosachuk*, 49 A.D.3d 331, 332 (1st Dep't 2008) (non-compete covering the entire United States unreasonable because employer operated in only eight states). Illustrating the point, *Battenkill Veterinary Equine P.C. v. Cangelosi* approved a three-year non-compete that prohibited a former employee from practicing

a subset of veterinary medicine within a 35-mile radius.  1 A.D.3d 856, 857-58 (3d Dep't 2003); *see also Reed Elsevier Inc.*, 2014 WL 97317, at *8 (noting that "the severely restricted geographic scope may have saved the temporal provision in *Battenhill* from a finding of unreasonableness").  Here, by contrast, even a forgiving interpretation of the non-compete clause would prohibit former employees from working for any competitor in the United States.

Second, the cognizable employer interests that may justify a non-compete clause include "(1) protection of trade secrets, (2) protection of confidential customer information, (3) protection of the employer's client base, and (4) protection against irreparable harm where the employee's services are unique or extraordinary."  *Flatiron Health*, 2020 WL 1320867, at *19 (citation omitted).  Aside from repeating the truism that non-compete clauses are not always "wrong, immoral, or unlawful" (Defs.' Mem. at 20), and conclusorily stating that an employee's breach would cause "great and irreparable harm" (*e.g.*, Magtoles Contract at 3), neither the contracts nor Defendants' motion provide any basis to conclude that the non-compete clause protects a cognizable employer interest.  The court struggles to imagine how a nurse would possess United Staffing's trade secrets, or how every nurse who signed United Staffing's "standard employment contract" offered unique or extraordinary services.  Further, as a staffing agency, United Staffing's clients are entities like

17

health care centers rather than individual patients. (*See, e.g.*, Compl. ¶ 24.)  It thus appears unlikely that a nurse would possess confidential information about United Staffing's clients, or that an individual nurse's departure would jeopardize United Staffing's relationships with its clients.

Third, the court recognizes that there are other nurses in the New York area.  As a result, it would not necessarily harm the general public to enforce the non-compete agreements.  *See, e.g.*, *Gelder Med. Grp. v. Webber*, 363 N.E.2d 573, 577 (N.Y. 1977) (finding that public would not be harmed because there were other physicians in village and other surgeons nearby); *Ricca v. Ouzounian*, 51 A.D.3d 997, 998 (2d Dep't 2008) (same, when other physicians practiced at hospital and there were other hospitals in the area).

Finally, and most importantly for TVPA purposes, the complaint pleads sufficient facts to find that enforcement of the non-compete would be unduly burdensome for the Nurse Plaintiffs. Given the breadth of the non-compete, a nurse would be effectively barred from her industry of choice for three years, regardless of how long she worked for United Staffing.  *See, e.g.*, *Silipos, Inc. v. Bickel*, 2006 WL 2265055, at *7 (S.D.N.Y. Aug. 8, 2006) (finding non-compete unduly burdensome when it would "force [employee] out of the entire industry for a year").  At the same time, the nurse would be faced with paying liquidated damages of up to $90,000,

depending on when she left United Staffing.  For example, a nurse who worked for United Staffing for one year would face the choice of either (1) continuing to work for United Staffing or (2) paying $60,000 in liquidated damages (close to a year's salary) while being effectively prohibited from working in the industry for three years.  It is obvious that such a Hobson's choice could compel a reasonable person in the Nurse Plaintiffs' position to continue working for United Staffing.

As with the liquidated damages provision, the court appreciates that that the enforceability of a non-compete clause is an "intensely fact-based inquiry" generally unsuitable for resolution on a motion to dismiss.  *Adecco USA, Inc. v. Staffworks, Inc.*, 2021 WL 2593304, at *8 n.4 (N.D.N.Y. June 23, 2021) (collecting cases).  Based on the face of the contracts and the facts alleged in the complaint, however, the court concludes that the allegedly unenforceable non-compete clause contributes to a sufficiently plausible allegation of serious harm under the TVPA. *See Dale Carmen*, 2021 WL 2476882, at *6, *9.

***Threats of Deportation and Litigation.***  Finally, the court finds that the immigration notification provision in the Nurse Plaintiffs' contracts, as well as Defendants' alleged threats of litigation, contribute to a plausible allegation of serious harm under the TVPA.

First, the Second Circuit has held that threats of deportation can constitute serious harm under the TVPA. *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 93-94 (2d Cir. 2019); *see also, e.g.*, *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) ("The threat of deportation alone may support a claim for forced labor."). Here, the Nurse Plaintiffs' contracts warned that United Staffing would notify immigration authorities about any change in their employment status and that such notification "may lead to . . . deportation . . . from the United States." (*E.g.*, Magtoles Contract at 3.)

In Defendants' view, this contractual provision was no more than a "permissible warning[] of adverse but legitimate consequences." (Defs.' Mem. at 22 (quoting *United States v. Bradley*, 390 F.3d 145, 151 (2d Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005)).) At this preliminary stage of the litigation, however, the court cannot agree. For example, the Second Circuit concluded in *Adia* that the plaintiff stated a TVPA claim based on the statement that "defendants would withdraw their sponsorship of [the plaintiff's] visa if he stopped working for them or gave them any trouble . . . ." 933 F.3d at 93. When "viewed in light of the surrounding circumstances," this statement "plausibly support[ed] an inference that [the plaintiff] was entitled to regard it as a threat to expose him to deportation." *Id.* So too here: when viewed in light of the surrounding

circumstances – including the existence of the liquidated damages provision and non-compete clause – the Nurse Plaintiffs could have plausibly regarded the immigration notification provision as an impermissible threat of deportation.

Second, the complaint alleges that Defendants have brought and threatened to bring lawsuits against Filipino healthcare professionals like Plaintiffs.  (Compl. ¶¶ 76-79; *see also id.* ¶¶ 64, 113(b).)  Contrary to Defendants' assertion (Defs.' Mem. at 10-11), this statement is a factual allegation (*i.e.*, Defendants have brought and threatened to bring lawsuits) rather than a legal conclusion (*i.e.*, Defendants threatened serious harm under the TVPA).  As the court has already found that the liquidated damages provision, non-compete clause, and reporting to immigration officials leading to deportation threaten serious harm, Defendants' alleged efforts and threats to enforce those contractual provisions provide further factual support for the Nurse Plaintiffs' TVPA claim.

B. Abuse of Legal Process Under Section 1589(a)(3)

For similar reasons, the court concludes that the Nurse Plaintiffs have adequately pleaded a TVPA claim based on a threatened abuse of legal process under Section 1589(a)(3).  The term "abuse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process . . . in any manner or for any purpose for which the law was not designed, in

order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).

In *Adia*, the Second Circuit held that threats of visa cancellation can also constitute a threatened abuse of legal process. 933 F.3d at 93; *see also, e.g.*, *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) ("[M]any courts have determined that threats of deportation constitute a condition of servitude induced through abuse of the legal process."). Similarly, the complaint alleges that Defendants have brought and threatened litigation to coerce employees like Plaintiffs into continuing to work for United Staffing. (Compl. ¶¶ 76, 113(b).) *See, e.g.*, *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 952 (N.D. Cal. 2019) (finding that threats of litigation, among other things, supported plausible TVPA claim).[4] Thus, in addition to supporting a claim based on threats of serious harm, Defendants' alleged threats of reporting, deportation, and litigation also support a claim based on an abuse of legal process under Section 1589(a)(3).

---

[4] Defendants cite to *Panwar v. Access Therapies, Inc.*, in which a district court found on summary judgment that "[i]t is not an abuse of legal process to enforce *valid* contractual rights against individuals who no longer wish to be bound by the terms of an agreement they voluntarily signed." 2015 WL 1396599, at *5 (S.D. Ind. Mar. 25, 2015) (emphasis added). The court concludes that *Panwar* is distinguishable because, in addition to being decided on summary judgment rather than a motion to dismiss, Plaintiffs have raised significant questions about the enforceability of the liquidated damages provision and non-compete clause.

C. Scheme, Pattern, or Plan Under Section 1589(a)(4)

Finally, the court's conclusion that the Nurse Plaintiffs have stated a claim under Section 1589(a)(4) largely flows from the foregoing discussion. *See Adia*, 933 F.3d at 93 (finding that plaintiff stated a claim under Section 1589(a)(4) "[f]or the same reasons" that plaintiff stated a claim under Section 1589(a)(3)). Section 1589(a)(4) prohibits a defendant from providing or obtaining labor "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(4). As discussed above, the complaint plausibly alleges that the standard terms of United Staffing's contracts and Defendants' alleged threats of litigation collectively satisfy the threshold of serious harm. Further, Defendants' conduct – including their recruiting of Filipino nurses and their imposition of the contracts' standard terms – "could plausibly be understood as a scheme to convince [the Nurse Plaintiffs] that [they] would be harmed" if they left United Staffing. *Adia*, 933 F.3d at 93. The complaint thus states a claim under Section 1589(a)(4) as well.

D. Intent

Under the TVPA, a defendant must "*knowingly* provide[] or obtain[] the labor or services of a person" using one of the

23

prohibited means described above.  18 U.S.C. § 1589(a) (emphasis added).   Subsection (a)(4) "contains a second scienter requirement," requiring a showing that the defendant knowingly used a scheme, plan, or pattern "*intended* to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . ."  *Paguirigan*, 2019 WL 4647648, at *19 (quotations and citation omitted).

Although Federal Rule of Civil Procedure 9(b) provides that "conditions of a person's mind may be alleged generally," a complaint's allegations of intent must still comply with the "strictures of Rule 8."  *Iqbal*, 556 U.S. at 687.  As a result, "Rule 8's plausibility standard applies to pleading intent." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015)). The court concludes that the facts alleged in the complaint support a plausible inference that Defendants knowingly and intentionally threatened the Nurse Plaintiffs with serious harm and an abuse of legal process, and that Defendants intended the Nurse Plaintiffs to believe that they would suffer serious harm if they stopped working for United Staffing.  In particular, the complaint alleges that the liquidated damages provision, non-compete clause, and immigration notification provision are part of United Staffing's "standard employment contract."  (Compl. ¶ 18.)   United Staffing

24

was a party to these contracts, and Defendant Santos signed them on behalf of the company. (*E.g.*, Magtoles Contract at 1, 7.)  As discussed above, the court has significant doubts about the enforceability of these contracts, including whether the liquidated damages provision is plainly disproportionate to United Staffing's damages and whether the non-compete clause protects a cognizable employer interest.  Defendants' incorporation of these facially dubious provisions into the contracts, when combined with their alleged efforts to enforce the contracts (Compl. ¶¶ 76-80), support a plausible inference that Defendants intended to coerce the Nurse Plaintiffs into continuing to work for United Staffing.

### E. Venture Liability Under Section 1589(b)

The TVPA imposes liability on anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589(a)] . . . ."  18 U.S.C. § 1589(b).  The defendant must "know[] or [be] in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means . . . ."  *Id.*  Here, the court may reasonably infer that United Staffing financially benefitted by receiving payments from its clients, such as the Regal Heights Rehabilitation and Care Center, and that Defendant Santos financially benefitted by receiving payments from his company,

United Staffing.  (*See* Compl. ¶¶ 14, 18, 24, 33, 40.)  Because the complaint plausibly alleges that Defendants financially benefited from their alleged violations of Section 1589(a), the Nurse Plaintiffs have also stated a claim for venture liability under Section 1589(b).  *See Paguirigan*, 286 F. Supp. 3d at 439.

### F. Trafficking Under Section 1590(a)

Similarly, the TVPA extends liability to anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter . . . ."  18 U.S.C. § 1590(a); *see also Adia*, 933 F.3d at 94 ("[I]f a defendant violates section 1589, he also violates section 1590 if he recruited the person to perform forced labor."). The complaint alleges that Defendants recruited the Nurse Plaintiffs to provide nursing services, and that the Nurse Plaintiffs actually worked for United Staffing in New York. (Compl. ¶¶ 18-21, 23, 32, 40.)  Thus, when combined with their well-pleaded claims under Sections 1589, the Nurse Plaintiffs also state a TVPA claim under Section 1590.  *See, e.g.*, *Paguirigan*, 286 F. Supp. 3d at 439.[5]

---

[5] The complaint asserts the alleged violations of Sections 1589 and 1590 in a single claim for relief.  (Compl. ¶¶ 102-03.)  Because Sections 1589(a), 1589(b), and 1590(a) provide distinct bases for liability, however, the court has addressed them separately.  *See, e.g.*, *Paguirigan*, 286 F. Supp. 3d at 437-39.

G. Conspiracy and Attempt Under Section 1594

The complaint also states a claim for conspiracy to violate the TVPA.  18 U.S.C. § 1594(b).  "For there to be a conspiracy, there must be an agreement to violate the prohibition on forced labor." *Paguirigan*, 286 F. Supp. 3d at 440.  The court can reasonably infer the existence of an agreement because Defendant Santos allegedly used his company, United Staffing, to commit the TVPA violations.  (*See, e.g.*, Compl. ¶¶ 14-16, 18.) Although Defendants criticize the specificity of the complaint's allegations regarding acts taken in furtherance of the conspiracy (Defs.' Mem. at 16), the TVPA "does not have an overt act requirement." *Paguirigan*, 286 F. Supp. 3d at 440 n.6.

Finally, because the Nurse Plaintiffs state a claim for violating the TVPA under Sections 1589 and 1590, they also state a claim for attempting to violate the TVPA under Section 1594(a). *Paguirigan*, 286 F. Supp. 3d at 439-40.[6]

**II.   Plaintiff Ana Mervine Espinosa's TVPA Claims**

The complaint asserts the TVPA claims on behalf of all Plaintiffs.  (Compl. ¶¶ 93-120.)  Unlike the Nurse Plaintiffs,

---

[6] Defendants identify several portions of the complaint that include legal conclusions about Plaintiffs' TVPA claims.  (*See, e.g.*, Defs.' Mem. at 4, 14-15 (citing, *e.g.*, Compl. ¶¶ 55, 94-95, 97-98, 100-02).)  But as Defendants concede, "legal conclusions can provide the framework of a complaint." (*Id.* at 3 (quoting *Iqbal*, 556 U.S. at 679).)  The court has not relied on legal conclusions to determine whether the complaint states a claim, but has instead relied upon the facts alleged in the complaint and – at Defendants' invitation (*id.* at 5) – the plain language of the contracts themselves.

however, the complaint does not allege that Plaintiff Ana Mervine Espinosa ever started working for United Staffing. (*See* Defs.' Mem. at 12-13.) Instead, the complaint alleges only that Plaintiff Ana Mervine Espinosa (1) was recruited by Defendants to work for United Staffing, (2) was unlawfully told by Defendants' manager that she had to pay for the costs of obtaining a labor certification, and (3) eventually paid Defendants $7,532.00 to obtain a labor certification. (Compl. ¶¶ 47, 50-54.)

Without an allegation that Plaintiff Ana Mervine Espinosa worked for United Staffing, the court cannot conclude that Defendants "provide[d] or obtain[ed]" her labor in violation of Section 1589. The court will accordingly grant Defendants' motion to that limited extent. However, Plaintiff Ana Mervine Espinosa has adequately pleaded trafficking, conspiracy, and attempt claims for all of the reasons explained above. *See Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017) (Souter, J.) ("Although § 1589 requires that labor or services be provided or obtained, the other provisions noted here [including trafficking under § 1590(a), conspiracy under § 1594(b), and attempt under § 1594(a)] do not."). Indeed, because Ms. Espinosa would have been subject to the provisions in United Staffing's "standard employment contract" (Compl. ¶ 18), the complaint gives rise to a plausible inference that Ms. Espinosa was recruited for the purpose of providing forced labor in violation of the TVPA.

## III.   Declaratory Judgment

The Nurse Plaintiffs seek a declaration that the liquidated damages provision and non-compete clause in their contracts are unenforceable. (Compl. ¶¶ 128-36.) "A request for a declaratory judgment is constitutionally ripe for review when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 232 n.44 (2d Cir. 2020) (quotations and citation omitted). Defendants argue that this standard is not satisfied because the complaint fails to allege that Defendants "are actively seeking to enforce the provisions" of the Nurse Plaintiffs' contracts. (Defs.' Mem. at 30.)

Defendants have not, however, "definitively stated" that they will not seek to enforce the liquidated damages provision or the non-compete clause against the Nurse Plaintiffs in the future. *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 428 (S.D.N.Y. 2021); *see also, e.g.*, *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010) ("[The defendant] cannot move to dismiss [the plaintiff's] claim [for declaratory judgment]; refuse to agree not to enforce the [agreement]; and at the same time claim that [plaintiff] has not shown that it intends to enforce the agreement."). Given the six-year statute of limitations applicable to breach of contract actions in New York,

C.P.L.R. § 213(2), and the complaint's allegation that Defendants "have brought and threatened to bring" lawsuits against employees like the Nurse Plaintiffs (Compl. ¶ 76), the court concludes that a sufficient controversy exists between the parties to warrant issuance of a declaratory judgment.  Indeed, resolving uncertainty about issues like whether the Nurse Plaintiffs may seek other employment, and whether they must pay liquidated damages to United Staffing, "is one of the main purposes of declaratory judgments." *Arakelian*, 735 F. Supp. 2d at 41.

## IV.  Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted).  The complaint here clearly does so, with the Nurse Plaintiffs alleging: (i) that they formed contracts with United Staffing to provide nursing services (Compl. ¶¶ 19-21); (ii) that they performed under the contracts by providing nursing services in the New York area (*id.* ¶¶ 23-24, 28, 32-33, 36, 40, 43); (iii) that Defendants breached the contracts by failing to pay prevailing wages (*id.* ¶¶ 25-27, 29-31, 34-35, 37-39, 41-42, 44-46); and (iv) that they suffered damages in the form of lower wages (*id.* ¶¶ 26-

27, 34-35, 41-42).[7]

Defendants claim that the complaint "does not accurately reflect the actual language" of the contracts. (Defs.' Mem. at 29.)  The contracts themselves, however, belie that assertion. United Staffing agreed to pay the Nurse Plaintiffs "a salary or wage that complies with the laws, rules, regulations[,] *and* prevailing wages depending on the location" where the employee worked.  (*E.g.*, Magtoles Contract at 3 (emphasis added).) Defendants argue that the Nurse Plaintiffs cannot claim a breach of contract based on the failure to pay prevailing wages because they have not also alleged a failure to comply with applicable laws, rules, and regulations.  (Defs.' Mem. at 29-30.)  This argument, which Plaintiffs charitably characterize as "convoluted" (Pls.' Opp'n at 14), is meritless.  By using the word "and," the contracts unambiguously required United Staffing to pay prevailing wages, regardless of whether the company complied with applicable laws, rules, and regulations.

---

[7] To the extent that Defendants' accusation of "lumping" defendants together is intended to challenge the complaint's assertion of a breach of contract claim against Defendant Santos (Defs.' Mem. at 11-12), the court finds that the complaint adequately pleads liability based on piercing the corporate veil. *See, e.g.*, *Paguirigan*, 286 F. Supp. 3d at 441 (denying motion to dismiss and noting that whether to pierce the corporate veil is a "fact-intensive" inquiry). The complaint alleges that Santos dominated United Staffing as the company's owner, president, and CEO, and that he used that control to wrong Plaintiffs by committing TVPA violations, including by signing the Nurse Plaintiffs' contracts on behalf of United Staffing.  (Compl. ¶¶ 14-16; *see, e.g.*, Magtoles Contract at 7.)

## V.   Fraud and Unjust Enrichment

Finally, Defendants move to dismiss Plaintiff Ana Mervine Espinosa's fraud and unjust enrichment claims because they are based on United Staffing's alleged failure to pay for the costs of her labor certification.   In Defendants' view, the court lacks subject matter jurisdiction over these claims because Ms. Espinosa has not exhausted the administrative remedies available under the Immigration and Nationality Act.   (Defs.' Mem. at 30-31.)

To be sure, "the INA's complaint process 'indicate[s] Congress' clear intent to limit enforcement of alleged violations to administrative mechanisms before resort can be had to a court action.'"   *Palmer v. Trump Model Mgmt., LLC*, 175 F. Supp. 3d 103, 108 (S.D.N.Y. 2016) (alteration original) (quoting *Biran v. JPMorgan Chase & Co.*, 2002 WL 31040345, at *2 (S.D.N.Y. Sept. 12, 2002)).   However, Plaintiff Ana Mervine Espinosa does not allege a violation of the INA itself.   Rather, she asserts common law claims for fraud and unjust enrichment based on Defendants' alleged failure to pay for the costs of her labor certification.   *See, e.g., Sugg v. Virtusa Corp.*, 2019 WL 1924855, at *3 (D.N.J. Apr. 30, 2019) (denying motion to dismiss when "allegations concerning Defendant's visa practices [were] fundamental to Plaintiff's employment discrimination claim, not the basis of a separate claim"); *Heldt v. Tata Consultancy Servs., Ltd.*, 132 F. Supp. 3d 1185, 1191 (N.D. Cal. 2015) (similar).   Because the fraud and

32

unjust enrichment claims "are not INA claims but rather use [Defendants'] purported violations of the INA as evidence to support the []claims," the INA's exhaustion requirement provides no basis for dismissal. *Hermant Patel, M.D., P.C. v. Bandikatla*, 2021 WL 4254977, at *2 (S.D.N.Y. Sept. 17, 2021).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED to the limited extent that Plaintiff Ana Mervine Espinosa asserts violations of Section 1589 of the TVPA.  The motion is otherwise DENIED in full.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    Brooklyn, New York
          December 30, 2021