UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

MARY GRACE MAGTOLES, AIRA C. TAN,
ANA MYRENE ESPINOSA, and ANA MERVINE
ESPINOSA, individually and on behalf
of all others similarly situated,

                  **MEMORANDUM & ORDER**

           Plaintiffs,      21-CV-1850 (KAM) (PK)

      - against -


UNITED STAFFING REGISTRY, INC. d/b/a
UNITED HOME CARE and BENJAMIN H. SANTOS,

           Defendants.

----------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Plaintiffs Mary Grace Magtoles, Aira Tan, and Ana Myrene

Espinosa (collectively, the "Nurse Plaintiffs") are Filipino

nurses who worked for Defendant United Staffing Registry, Inc., a

healthcare staffing agency owned by Defendant Benjamin H. Santos.

The Nurse Plaintiffs assert claims for violations of the

Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589 *et

seq.*, declaratory judgment, and breach of contract under New York

Law.

        The Nurse Plaintiffs now move for class certification

pursuant to Federal Rule of Civil Procedure 23.  For the reasons

set forth below, the Nurse Plaintiffs' motion is GRANTED.

**BACKGROUND**

**I.   Factual Background**

Defendant United Staffing, Inc. is a staffing agency
that recruits nurses and other professionals to provide healthcare
services for its clients in the New York City area.  (ECF No. 40-
16 ("United Staffing 30(b)(6) Tr.") at 18-20; ECF No. 40-50
("United Staffing Client List") at 2.)[1]  Most of the nurses that
United Staffing recruits from abroad are citizens of the Republic
of the Philippines.  (ECF No. 40-30 ("Pascual Tr.") at 80; ECF No.
40-31 ("Santos Decl.") ¶ 3.)

Before beginning work in the United States, United
Staffing required its foreign recruits to sign a standard, three-
year employment contract with the company.  (ECF No. 40-32
("Pascual Decl.") ¶ 6.)  In 2018 and 2019, the Nurse Plaintiffs –
Mary Grace Magtoles, Aira Tan, and Ana Myrene Espinosa – each
signed United Staffing's standard employment contract to work for
the company as a registered nurse.  (ECF No. 40-7 ("Magtoles
Contract"); ECF No. 40-12 ("Tan Contract"); ECF No. 40-13
("Espinosa Contract").)  Four provisions of the Nurse Plaintiffs'
contracts are relevant to the instant motion.

---

[1] All pin citations refer to the page number assigned by the court's CM/ECF
system.

*First*, United Staffing's standard contract required nurses to work a minimum number of hours during the three-year period. (*See, e.g.*, Magtoles Contract at 3.) If a nurse leaves United Staffing before working the minimum number of hours, she would be required to pay $15 in "liquidated damages" for each hour that she did not complete. (*See, e.g.*, *id.*) Most of United Staffing's foreign recruits – including the Nurse Plaintiffs and more than fifty others – signed a contract requiring 6,000 hours of work over the three-year period. (*See, e.g.*, *id.*; Pascual Decl. ¶ 22.) Thus, if a nurse left United Staffing after completing 2,000 hours of work over the course of one year, she would owe $60,000 in "liquidated damages."[2]

*Second*, United Staffing's standard contract included a non-compete clause of striking breadth. If a nurse left United Staffing before completing the minimum number of hours, she could not:

> 1.   In any manner whatsoever, directly or indirectly, work as a nurse, practice nursing, work as a physician's assistant, or otherwise practice the art of/science of nursing; or
> 2.   Directly or indirectly operate, own, lease (as landlord or tenant), engage or participate in as an owner, partner, employee, joint venturer, shareholder, director, assignor, seller, transferor, or as sales or marketing agent or otherwise, in, for or in connection with any business which competes with [United Staffing]

---

[2] Thirteen nurses signed an employment contract requiring the completion of 5,100 hours over the three-year period, rather than 6,000 hours. (Pascual Decl. ¶ 21.) Similarly, one nurse signed an employment contract requiring the completion of 5,616 hours over the three-year period. (*Id.* ¶ 23.)

> within the United States for a period of THREE (3) YEARS
> after the EMPLOYEE servers his/her relationship with
> [United Staffing].

(*E.g.*, Magtoles Contract at 3.)

*Third*, United Staffing agreed to pay "a salary or wage that complies with the laws, rules, regulations[,] and prevailing wages" applicable to the nurse's work location. (*E.g.*, Magtoles Contract at 4.)  In the New York metropolitan area, where all of United Staffing's employees worked, the prevailing wage for a "Level 1" registered nurse was $30.62 per hour between July 2010 and June 2011, and eventually reached $33.49 per hour between July 2020 and June 2021.  (ECF No. 40-22 ("Prevailing Wage Rates") at 2, 20; *see, e.g.*, Pascual Decl. ¶ 16.)

*Fourth*, United Staffing's standard contract included a section entitled "Termination of Permanent Resident Card/Deportation." (*E.g.*, Magtoles Contract at 4.)  The contracts stated that United Staffing "will report" a nurse's breach of contract to "appropriate government authorities," including the United States Citizenship and Immigration Service and Immigration and Customs Enforcement. (*Id.*)  The contracts further warned that "such report may lead to the termination of the Permanent Resident Card (Green Card) and deportation of EMPLOYEE from the United States." (*Id.*)

Beginning around the end of 2019, United Staffing substantially changed its standard employment contract for

registered nurses.  (*See* ECF Nos. 40-46 to 40-48.)  Among other things, United Staffing's new contracts included a forum selection clause providing that all disputes – other than a request for a temporary restraining order or a preliminary injunction – shall be resolved in an arbitration before the American Arbitration Association. (*E.g.*, ECF No. 40-46 at 6.)  United Staffing's new contracts also included a class action waiver provision.  (*E.g.*, *id.* at 6-7.)  In their reply brief, the Nurse Plaintiffs represent that they do not seek to include in the certified class any nurses who signed a contract with United Staffing that contained a class action waiver and arbitration clause.  (ECF No. 40-54 ("Pls.' Reply") at 4.)

## II.  Procedural History

The Nurse Plaintiffs and Plaintiff Ana Mervine Espinosa commenced this action on April 6, 2021.  (ECF No. 1 ("Compl.").)  On December 30, 2021, the court issued a memorandum and order granting in part and denying in large part Defendants' motion to dismiss. *Magtoles v. United Staffing Registry*, 2021 WL 6197063 (E.D.N.Y. Dec. 30, 2021).  Based on the liquidated damages provision, non-compete clause, and immigration notification provision in United Staffing's standard contract, the court concluded that the Nurse Plaintiffs stated plausible claims for violations of the TVPA, breach of contract, and a declaratory judgment. *Id.* at *3-11.  Although the court concluded that

Plaintiff Ana Mervine Espinosa could not assert claims under Section 1589 of the TVPA – because the complaint failed to allege that she ever started work for United Staffing – the court found that Ms. Espinosa stated plausible claims for trafficking, conspiracy, and attempt under the TVPA, as well as for fraud and unjust enrichment under New York law. *Id.* at *10, *12.

On February 8, 2022, Magistrate Judge Kuo issued an order certifying the close of all discovery. (2/8/22 Minute Order.)  On May 26, 2022, the court will hold a pre-motion conference regarding Plaintiffs' intended motion for summary judgment. (4/26/22 Minute Order.)  In the meantime, the Nurse Plaintiffs' motion for class certification is fully briefed and ripe for decision.

## LEGAL STANDARD

To certify a class action, the Nurse Plaintiffs must show that: (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately protect the interests of the class" (adequacy).  Fed. R. Civ. P. 23(a); *see also In re U.S. Foodservice, Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). The Second Circuit has also recognized an implied requirement of ascertainability in Rule 23(a), meaning that the class must be

"sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobas Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (citation omitted).

In addition to Rule 23(a), Plaintiffs must show that this action falls within one of the types of class actions authorized by Rule 23(b). As relevant here, Rule 23(b)(3) permits the certification of a class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(2), the court may also certify a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, "[t]he party seeking class certification bears the burden of demonstrating compliance with Rule 23's prerequisites by a preponderance of the evidence." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020) (summary order) (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016)).

**DISCUSSION**

The Nurse Plaintiffs move to certify a class of all Filipino nurses who worked under United Staffing's standard employment contract at any time since April 5, 2011, *i.e.*, a contract containing a liquidated damages provision, non-compete clause, immigration notification provision, and prevailing wage requirement. (ECF No. 40-1 ("Pls.' Mem.") at 6; Pls.' Reply at 4, 6.)

**I.  Numerosity**

Under Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the Nurse Plaintiffs "need not provide a precise quantification of their class," they must "show some evidence of or reasonably estimate the number of class members." *Emeterio v. A&P Rest. Corp.*, 2022 WL 274007, at *3 (S.D.N.Y. Jan. 26, 2022) (quoting *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015)).

Here, United Staffing has produced more than fifty contracts signed by Filipino nurses during the class period that contain the provisions challenged in this action – namely, a liquidated damages provision, a non-compete clause, a prevailing wage provision, and an immigration notification provision. (Pascual Decl. ¶¶ 22, 25.) The court agrees with the Nurse Plaintiffs that this evidence of over fifty contracts is sufficient

to demonstrate numerosity.  *See, e.g.*, *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members.").  Indeed, the evidence in the record suggests that the number of class members is much larger.  (*See* ECF No. 40-55 ("Howley Reply Decl.") ¶¶ 3-5 (Defendants admit that 296 individuals on United Staffing's payroll records were Filipino citizens who worked pursuant to an employment contract that was signed prior to the introduction of the class action waiver and arbitration clause in late 2019).)

Defendants argue that the numerosity requirement is not satisfied because the potential class members "are not geographically dispersed." (ECF No. 40-24 ("Defs.' Opp'n") at 13.)  In support of this argument, Defendants cite to a list of United Staffing nurses and note that the last known address for many of them is within New York State.  (*Id.* at 12-13 (citing ECF No. 40-49).)  It is true that "the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case," including geographic dispersion.  *Pa. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120.  "Geographic dispersion across multiple counties in New York," however, "generally supports a finding of numerosity." *In re Beacon Assocs. Litig.*, 2012 WL 1569827, at *5 (S.D.N.Y. May 3, 2012) (citation omitted); *see also, e.g.*, *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338,

348 (D. Conn. 2019) (finding numerosity satisfied when "class members live[d] all across Connecticut"). Here, the list provided by Defendants reveals addresses for United Staffing nurses from throughout the tristate area and the country, including Manhattan, Queens, the Bronx, Staten Island, Long Island, Westchester County, New Jersey, Pennsylvania, and Texas. (ECF No. 40-49 at 2-6.) In light of this dispersion, Defendants have not rebutted the presumption of numerosity.

Moreover, the numerosity inquiry also involves consideration of "the financial resources of class members" and "their ability to sue separately." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120. The modest financial resources of the class members, along with their foreign citizenship, green card status, and potential language barriers, also militate against separate lawsuits and instead weigh in favor of a finding of numerosity. *See, e.g.*, *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *5 (S.D.N.Y. Mar. 31, 2017) (finding joinder impracticable based on class members' "limited resources and language barriers"). Accordingly, the court finds that Rule 23(a)(1) is satisfied.

## II.  Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Barrows v. Becerra*, 24

F.4th 116, 130 (2d Cir. 2022) (quoting *Dukes*, 564 U.S. at 349-50).
The Nurse Plaintiffs' claims must rest on a "common contention"
that "is capable of classwide resolution – which means that
determination of its truth or falsity will resolve an issue that
is central to the validity of each one of the claims in one stroke."
*Dukes*, 564 U.S. at 350.

The court concludes that the commonality requirement is
satisfied as to all of the Nurse Plaintiffs' claims.  First, the
Nurse Plaintiffs' TVPA claims rest on a common contention: that
the liquidated damages provision, non-compete clause, and
immigration notification provision in United Staffing's standard
contract collectively threaten serious harm and otherwise violate
the TVPA.  *See, e.g.*, *Paguirigan v. Prompt Nursing Employment
Agency LLC*, 2018 WL 4347799, at *5 (E.D.N.Y. Sept. 12, 2018)
(finding commonality based on "whether defendants used the $25,000
contract termination fee and undue legal proceedings against some
nurses to coerce all nurses to continue working").  Second, the
Nurse Plaintiffs' breach of contract claims rely on the common
contention that United Staffing failed to pay its nurses the
prevailing wage, including during "orientation" periods and by
discounting nurses' wages for breaks that were not afforded to
them.  *See, e.g.*, *Pino v. Harris Water Main & Sewer Contractors,
Inc.*, 2021 WL 3675148, at *5 (E.D.N.Y. Aug. 19, 2021) ("In wage
cases, the commonality requirement is usually satisfied where the

plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." (citation omitted)).  Finally, the Nurse Plaintiffs' declaratory judgment claims depend on the common contention that the liquidated damages provision and non-compete clause are unenforceable as a matter of law.  *See, e.g.*, *Paguirigan*, 2018 WL 4347799, at *5 (finding commonality based on enforceability of liquidated damages provision).  Resolving these common contentions will generate classwide answers for other Filipino nurses regarding whether the terms of United Staffing's standard contract violate the TVPA; whether United Staffing in fact had a practice of unlawfully discounting nurses' wages for breaks and orientations; and whether the non-compete clause and liquidated damages provision violate public policy under New York law.

Defendants challenge the commonality of the TVPA claims by arguing that the background and characteristics of the putative class are not uniform.  (Defs.' Opp'n at 14-16.)  These arguments "are more properly directed to the predominance requirement of Rule 23(b)(3)."  *Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 2011 WL 7095434, at *6 n.2 (C.D. Cal. Dec. 12, 2011).  Indeed, the "predominance" section of Defendants' opposition repeats, and incorporates, the arguments contained in the "commonality" section.  (Defs.' Opp'n at 25-26.)  Accordingly, the court will address, in the context of the predominance requirement,

Defendants' arguments regarding the different backgrounds and characteristics of the putative class members. *See, e.g.*, *In re Kind LLC "Healthy and All Natural" Litig.*, 337 F.R.D. 581, 594 (S.D.N.Y. 2021) ("Because 'the predominance criterion is far more demanding' than commonalty, 'Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) predominance requirement.'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 624 (1997))).

## III.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows*, 24 F.4th at 131 (citation omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also, e.g.*, *Francisco v. NY Tex Care, Inc.*, 2022 WL 900603, at *8 (E.D.N.Y. Mar. 28, 2022) ("Since the claims only need to share the same essential characteristics, and

need not be identical, the typicality requirement is not highly demanding.").

Here, each class member's claim arises from the same course of events, *i.e.*, their recruitment by United Staffing and their work as a registered nurse pursuant to an employment contract containing the provisions challenged by the Nurse Plaintiffs. Moreover, each class member will make similar legal arguments in an attempt to prove Defendants' liability, including that the liquidated damages provision and non-compete clause are unenforceable; that the non-compete clause, liquidated damages provision, and immigration notification provision threaten serious harm under the TVPA; and that United Staffing breached its agreement to pay prevailing wages by, among other things, discounting nurses' pay for breaks that they were not actually afforded.

Defendants argue that the Nurse Plaintiffs' TVPA claims are not typical because United Staffing's contracts were not uniform. (Defs.' Opp'n at 21.) For example, Defendants note that, beginning in late 2019, United Staffing altered its standard contract to include a class action waiver provision and arbitration clause. (*Id.* at 12.) As discussed above, however, Plaintiffs do not seek to include anyone within the proposed class who signed a contract containing a class action waiver and arbitration clause. (Pls.' Reply at 4.)

Defendants also note that a minority of contracts required the completion of less than 6,000 hours. (Defs.' Opp'n at 21.) In particular, thirteen nurses signed a contract requiring 5,100 hours, and one nurse signed a contract requiring 5,616 hours. (Pascual Decl. ¶¶ 21, 23.) For typicality to be satisfied, however, the claims "need not be identical," but simply must share the same "essential characteristics." *Francisco*, 2022 WL 900603, at *8 (citation omitted). Despite the minor variations in the minimum number of hours, all of United Staffing's contracts with a liquidated damages provision contain the same essential characteristics.

The court thus agrees with the Nurse Plaintiffs that the small differences in the minimum number of hours amount to "a distinction without a difference." (Pls.' Reply at 5.) For the contracts requiring 5,100 hours, the maximum liquidated damages amount was $76,500. For the contract requiring 5,616 hours, the maximum liquidated damages amount was $84,240. As explained in the memorandum and order regarding Defendants' motion to dismiss, courts have concluded that contractual penalties between $15,000 and $25,000 – far less than the amounts at issue here – threatened serious harm under the TVPA to "foreign citizens who came to the United States to work as healthcare professionals." *Magtoles*, 2021 WL 6197063, at *3 (collecting cases). In light of these precedents, the slight differences in the required number of hours

contained in a minority of United Staffing's contracts do not render the Nurse Plaintiffs' claims atypical. To the contrary, United Staffing acknowledges that the vast majority of United Staffing's contracts prior to the end of 2019 required 6,000 hours (*see* Pascual Decl. ¶ 22), rendering the Nurse Plaintiffs' claims quintessentially typical.

Citing to cases regarding when prevailing wages must be paid as a matter of federal immigration regulations, Defendants also argue that the Nurse Plaintiffs' contract claims are atypical of the class because nurses achieved their immigration status in different ways. (Defs.' Opp'n at 21-22.) Under United Staffing's standard contract, however, nurses were entitled to "a salary or wage that complies with the laws, rules, regulations, *and* prevailing wages depending on the location" of the nurse's assigned healthcare facility. (*E.g.*, Magtoles Contract at 4 (emphasis added).) The court thus agrees with the Nurse Plaintiffs that "[t]he contractual duty to pay the prevailing wage is not dependent on how the nurse obtained her immigration status." (Pls.' Reply at 8.) Accordingly, nurses' differing immigration statuses do not render the Nurse Plaintiffs' claims atypical.

Finally, Defendants suggest that the typicality requirement is not satisfied because the Nurse Plaintiffs face counterclaims for the liquidated damages amount. (Defs.' Opp'n at 22-23.) "Although [D]efendants are correct that the

counterclaim[s] concern[] only [the Nurse Plaintiffs] and not
absent class members, [D]efendants fail to identify anything about
[the Nurse Plaintiffs'] defense to the counterclaim[s] that would
be inconsistent with the proposed class's interests." *Paguirigan*,
2018 WL 4347799, at *6.  Accordingly, the court concludes that
Rule 23(a)(3) is satisfied.

## IV.  Adequacy

Rule 23(a)(4) requires that the representative parties
"fairly and adequately protect the interests of the class."  Fed.
R. Civ. P. 23(a)(4).  Rule 23(a)(4) "only concerns the adequacy of
the class representatives." *Jin v. Shanghai Original, Inc.*, 990
F.3d 251, 263 (2d Cir. 2021).[3]  "For named class representatives
to be 'adequate' under Rule 23, '[t]wo factors generally inform
[the inquiry]: (1) absence of conflict and (2) assurance of
vigorous prosecution." *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir.
2019) (alterations in original; citation omitted); *see also, e.g.*,
*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d
Cir. 2009) (explaining that a conflict "must be fundamental" to
defeat adequacy (citation omitted)).  "Courts rarely deny class
certification on the basis of the inadequacy of class
representatives, doing so only in flagrant cases, where the

---

[3] "Historically, the adequacy of *counsel* was analyzed under Rule 23(a)(4),
however, Rule 23(g) was enacted by Congress [in 2003] to govern the appointment
of class counsel . . . ." *Allegra v. Luxottica Retail N. Am.*, 2022 WL 42867,
at *13 (E.D.N.Y. Jan. 5, 2022) (emphasis added).

putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Pryce v. Progressive Corp.*, 2022 WL 1085489, at *17 (E.D.N.Y. Feb. 17, 2022) (citation omitted), *report and recommendation adopted in relevant part*, 2022 WL 969740, at *7 (E.D.N.Y. Mar. 31 2022).

Here, the Nurse Plaintiffs each entered into the same standard contract containing the same liquidated damages provision, non-compete clause, immigration notification provision, and prevailing wage requirement. (Magtoles Contract at 3-4; Tan Contract at 3-4; Espionsa Contract at 3-4.) Moreover, each Nurse Plaintiff declares that she is not aware of any interest that is antagonistic to the class, and that she has and will continue to remain actively involved in this litigation. (ECF No. 40-56 ("Tan Reply Decl.") ¶¶ 10-11; ECF No. 40-57 ("Espinosa Reply Decl.") ¶¶ 10-11; ECF No. 40-58 ("Magtoles Reply Decl.") ¶¶ 10-11.) "Most courts determine a plaintiff is an adequate class representative where, in addition to complying with discovery, she submits an affidavit outlining her understanding of a class representative['s] responsibilities, her willingness to prosecute the case, and her routine communications with counsel." *Allegra*, 2022 WL 42867, at *14. The Nurse Plaintiffs' declarations satisfy these requirements.

Seeking to dispute the Nurse Plaintiffs' adequacy as class representatives, Defendants point to three other potential class members – Ronariza Beltran, Dexterie Perez, and John Carlo Sahagun – who state that they would not join the class and did not feel threatened by the contractual provisions challenged here. (Defs.' Opp'n at 23-24.) "The fact that other employees might disagree with the allegations in the complaint," however, "does not mean that the [Nurse Plaintiffs] [are] unfit to be the class representative[s]." *Valdez v. MichPat & Fam, LLC*, 2022 WL 950450, at *11 (E.D.N.Y. Mar. 30, 2022). Defendants also cite to the Nurse Plaintiffs' deposition transcripts in an effort to undermine their knowledge and ability to represent the class. (Defs.' Opp'n at 24.) "These arguments amount to attacks 'based on the representative[s'] ignorance,' which are generally disfavored." *Allegra*, 2022 WL 42867, at *13 (quoting *In re Flag Telecom*, 574 F.3d at 42). Having reviewed the deposition transcripts, the court finds that the Nurse Plaintiffs "meet the 'modest' requirement of being 'aware of the basic facts underlying the lawsuit,'" and that they are "unlikely 'to abdicate [their] obligations to fellow class members.'" *Id.* (alteration in original; citation omitted). Accordingly, Rule 23(a)(4) is satisfied.

## V. Ascertainability

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite

boundaries." *In re Petrobas Sec.*, 862 F.3d at 257. "This is not meant to be a demanding standard; rather, it is designed only to prevent certification of classes whose membership is actually indeterminable." *Pryce*, 2022 WL 1085489, at *12 (quotations and citation omitted). Here, the Nurse Plaintiffs seek to certify an ascertainable class that is defined by objective criteria – namely, Filipino nurses who worked for United Staffing at any time since April 6, 2011 pursuant to an employment contract containing a liquidated damages provision, a non-compete clause, a requirement to pay prevailing wages, and an immigration notification provision. *See, e.g.*, *Madanat v. First Data Corp.*, 282 F.R.D. 304, 314 (E.D.N.Y. 2012) (finding a class ascertainable where it was defined by the inclusion of a liquidated damages clause).

Defendants argue that the proposed class "sweeps too broadly" and therefore is not ascertainable. (Defs.' Opp'n at 11-12.) Although Defendants again invoke the post-2019 contracts that included a class action waiver provision and arbitration clause (*id.* at 12), Plaintiffs do not seek to include anyone within the proposed class who signed a contract containing a class action waiver and arbitration clause. (Pls.' Reply at 4.) Indeed, unlike the Nurse Plaintiffs' contracts, the post-2019 contracts that include a class action waiver and arbitration clause do not include a liquidated damages provision, non-compete clause, or immigration notification provision. (*See, e.g.*, ECF No. 40-46 at 14-21.) By

referencing the objective criteria of these contractual provisions, the court can readily determine whether a particular nurse falls within the class. Defendants also claim that the class is not ascertainable because a minority of the contracts required less than 6,000 hours of work. (Defs.' Opp'n at 11.) As discussed above, however, the court concludes that the minor variations in the minimum number of hours do not materially affect the TVPA claims or the claims for declaratory and injunctive relief. By referencing the objective criteria of whether a particular contract includes a liquidated damages provision – whether based on a minimum of 6,000, 5,616, or 5,100 hours – the court will be able to ascertain whether a particular nurse is part of the class.

## VI.  Rule 23(b)(3)

To certify a class under Rule 23(b)(3), the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court finds that both criteria are satisfied in this case.

### A. Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized proof." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (citation omitted). Predominance "imposes a 'far more demanding' inquiry into the common issues which serve as the basis for class certification." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem Prods., Inc.*, 521 U.S. at 624). Nevertheless, "[i]ndividual questions need not be absent. . . . The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.* (first alteration in original; citation omitted). The court concludes that common questions predominate with respect to the Nurse Plaintiffs' claims for violations of the TVPA, breach of contract, and declaratory and injunctive relief.

*First*, common questions predominate with respect to whether the provisions of United Staffing's standard contract violate the TVPA. As relevant here, a defendant is liable under the TVPA when he provides or obtains labor or services by means of: "serious harm or threats of serious harm," "the abuse or threatened abuse of law or legal process," or a "scheme, plan, or pattern intended to cause the person to believe that . . . th[e] person . . . would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(2)-(4). To qualify as "serious harm" under Sections 1589(a)(2) and (a)(4), the harm must be "sufficiently

serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2). The term "serious harm" incudes financial harm, *see id.*, as well as threats of deportation, *see Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 93-94 (2d Cir. 2019).

"The TVPA's explicit statutory language makes clear that a 'reasonable person' standard applies in determining whether a particular harm (or threat of harm) is sufficiently serious to compel an individual to continue performing labor or services." *Paguirigan*, 2018 WL 4347799, *8. As a result, "the TVPA inquiry will not turn on, or require, individualized determinations." *Id.* (quoting *Tanedo*, 2011 WL 7095434, at *8). "Instead, the inquiry will look at the Defendants' actions and assess how a reasonable person from the Plaintiffs' background would respond to those actions." *Id.* (quoting *Tanedo*, 2011 WL 7095434, at *8).

Seeking to distinguish *Paguirigan*, Defendants argue – without citation to the record or Judge Gershon's opinions – that the proposed class in this case is not as "cohesive" as the class in *Paguirigan*. (Defs.' Opp'n at 17-19.) In Defendants' view, the differences in class members' background and circumstances – including with respect to work experience, preexisting connections to the United States, assigned healthcare facility, and the process

through which nurses obtained their immigration status – preclude application of the TVPA's reasonable person standard on a classwide basis. (*Id.* at 14-19.)  *Paguirigan*, however, concluded that common questions predominated because the putative class members "shared background characteristics including national origin, profession, and approximate level of education, and shared the circumstance of being employed by defendants in New York."  2018 WL 4347799, at *8.  The same is true in this case.  In sum, although "Defendants argue that Plaintiffs' backgrounds vary significantly," the differences they identify "are far less significant than the . . . common characteristics shared by the class members," including that they are citizens of the same country and worked in the same profession, for the same company, at facilities in the same region, pursuant to the same standard employment contract.  *Tanedo*, 2011 WL 7095434, at *8.[4]  Accordingly, the court concludes that the

---

[4] Based on these shared characteristics, the court finds Defendants' citation to *Panwar v. Access Therapies, Inc.*, 2015 WL 329013 (S.D. Ind. Jan. 22, 2015), unpersuasive. (*See* Defs.' Opp'n at 18-19.)  As an initial matter, the court respectfully disagrees with *Panwar*'s suggestion that the TVPA requires "an individualized assessment of each employee's subjective beliefs about his or her [contract]."  2015 WL 329013, at *5; *see Paguirigan*, 2018 WL 4347799, at *8 (finding that the "reasonable person" analysis set forth in *Tanedo* "is the correct framework for considering plaintiff's TVPA claims").  In any event, the court concludes that *Panwar* is factually distinguishable because the proposed class members in that class "were recruited from various countries, the terms of the contracts were different, the promissory note amounts were different, employees did not all work in the same state, and they did not have the same working conditions."  2015 WL 329013, at *6.  Unlike the proposed class in *Panwar*, *see id.* at *3, all proposed class members in this case worked in New York and are citizens of the Philippines.  Moreover, the liquidated damages amounts in United Staffing's standard contract – whether based on a minimum hour requirement of 6,000 hours, 5616 hours, or 5,100 hours – dramatically exceed the employers' $10,000 to $20,000 penalties at issue in *Panwar*.

predominance requirement is satisfied with respect to the TVPA claims.

*Second*, "[d]istrict courts 'have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'" *Pino*, 2021 WL 3675148, at *10 (citation omitted). Here, the Nurse Plaintiffs contend that United Staffing had an illegal policy and practice of failing to pay nurses the prevailing wage, including by paying minimum wage during "orientation" periods and by discounting nurses' wages for breaks that they were not actually afforded. (*See, e.g.*, ECF No. 40-4 ("Magtoles Decl.") ¶¶ 9-12; ECF No. 40-8 ("Magtoles Pay Stubs") at 2 (showing a pay rate of $15.00 per hour in November 2019); ECF No. 40-9 ("Magtoles Time Sheet") at 2 (showing handwritten deductions to the number of hours worked).) Indeed, Defendant Santos acknowledges that United Staffing "basically go[es] with the flow on how the healthcare facilities pay us, and that is how we also pay our [nurses]." (Santos Decl. ¶ 12.)

In an effort to contest predominance, Defendants repeat their argument regarding prevailing wage requirements under federal immigration regulations. (Defs.' Opp'n at 19, 25.) The court rejects that argument because, as explained above, the prevailing wage requirement in United Staffing's standard contract was not dependent on a nurse's immigration status. Defendants

also contend that "[i]ndividual issues of compensation and number of hours worked defeat commonality" and predominance. (*Id.* at 20, 25.)  To the contrary, "numerous courts have found that wage claims are especially suited to class litigation – perhaps the most perfect questions for class treatment – despite differences in hours worked, wages paid, and wages due." *Mendez v. MCSS Rest. Corp.*, 2019 WL 2504613, at *11 (E.D.N.Y. June 17, 2019) (citation omitted).  Finally, Defendants note that the Nurse Plaintiffs signed agreements in November 2019 providing that they would only be paid the minimum wage during orientation. (Defs.' Opp'n at 20 (citing ECF No. 40-51).)  As Judge Gershon recognized in *Paguirigan*, "the core questions raised by both plaintiff's breach of contract claim and defendants' affirmative defense of waiver are common across the proposed class."  2018 WL 4347799, at *9. At most, the issues raised by Defendants go to the question of individualized damages, which is insufficient to defeat class certification. *See Sykes*, 780 F.3d at 81-82.

        *Third*, the court finds that common issues predominate with respect to the Nurse Plaintiffs' claims for declaratory and injunctive relief.  For example, as explained in the memorandum and order regarding Defendants' motion to dismiss, the enforceability of the liquidated damages provision under New York law will depend on whether United Staffing's damages are easily ascertainable, or whether the liquidated damages amount is plainly

disproportionate to United Staffing's injury. *Magtoles*, 2021 WL 6197063, at *5. Resolving these inquiries will depend largely on United Staffing's conduct and the costs that United Staffing incurs when a nurse leaves her position. Similarly, the enforceability of the non-compete clause under New York law will depend on factors like the reasonableness of its duration and geographic scope and the legitimacy of any interest of United Staffing that it may protect. *Id.* at *6-7. Again, these inquiries will be resolved predominantly through classwide proof, given that the class members worked in the same position for United Staffing and were subject to the same restrictions on competition. Accordingly, the court concludes that common questions predominate with respect to all of the Nurse Plaintiffs' claims.

　　　　B. <u>Superiority</u>

　　　　Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides four factors for the court to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and (D) the likely difficulties in managing a class action. *Id.*

Defendants do not dispute, and the court finds, that the superiority requirement is satisfied. "The court has no reason to believe that any individual Class Member has an interest in controlling the prosecution or that there are other cases involving the same subject matter." *Francisco*, 2022 WL 900603, at *11. To the contrary, the court finds that a class action is "particularly desirable in this case, where it is likely the *only* device by which many of the proposed class members" – who may have "limited resources" and lack "familiarity with the legal system" – could obtain relief. *Id.* (quotations and citations omitted). Moreover, it is desirable to concentrate the litigation of the claims in this district because Defendants and many potential class members reside here, and because "this action has already 'progressed substantially' through the discovery process on factual issues common to the class." *Scott v. Quay*, 338 F.R.D. 178, 191 (E.D.N.Y. 2021) (citation omitted). Finally, "the management of this case as a class action is entirely straightforward as it turns principally on common questions of fact and law concerning standard employment contracts." *Paguirigan*, 2018 WL 4347799, at *10.

## VII.   Rule 23(b)(2)

In the alternative, the court concludes that certification of the Nurse Plaintiffs' claims for declaratory and

injunctive relief is appropriate pursuant to Rule 23(b)(2). Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the injunctive relief sought will benefit the entire class." *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 118 (E.D.N.Y. 2019).

Here, the Nurse Plaintiffs seek a declaration that the liquidated damages provision and non-compete clause are unenforceable, as well as an injunction prohibiting Defendants from enforcing or threatening to enforce the liquidated damages provision and non-compete clause. (Compl. at 21-22, 24.) Based on the terms of United Staffing's standard contract, the claims for declaratory and injunctive relief "apply generally to the class," Fed. R. Civ. P. 23(b)(2), and would result in classwide relief if the Nurse Plaintiffs ultimately prevail.

Defendants argue that the declaratory and injunctive claims will not afford classwide relief because other United Staffing employees did not feel subjectively threatened by the contractual provisions challenged here. (Defs.' Opp'n at 26-27.) As explained above, however, the relevant inquiry under the TVPA is whether the harm is sufficiently serious that a "reasonable

person" in the Nurse Plaintiffs' position – *i.e.*, Filipino nurses working for Defendants in New York pursuant to United Staffing's standard contract – would be compelled to continue working.  18 U.S.C. § 1589(c)(2).  The subjective beliefs of United Staffing's nurses – whether the Nurse Plaintiffs or others – are not dispositive in this inquiry.  Defendants also note that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.  Given the six-year statute of limitations applicable to breach of contract actions in New York, however, *see* C.P.L.R. § 213(2), any nurse who worked for United Staffing in the past six years pursuant to its standard contract containing the provisions challenged here would benefit from classwide relief. (*See* Pls.' Reply at 13.)  Accordingly, even if certification were not appropriate under Rule 23(b)(3), the court finds that certification of the claims for declaratory and injunctive relief is appropriate under Rule 23(b)(2) for all class members who worked for United Staffing in the past six years.

**VIII.  Appointment of Class Counsel**

The Nurse Plaintiffs' counsel, Mr. John J.P. Hawley, Esq. and Mr. Leandro B. Lachica, Esq., also move to be appointed as co-lead class counsel. (Pls.' Mem. at 6.)  "Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).  In appointing class counsel, the court must

consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The Nurse Plaintiffs' counsel are exceedingly qualified applicants to represent the class under Rule 23. *See, e.g.*, *Paguirigan*, 2018 WL 4347799, at *7 (appointing Mr. Hawley and Mr. Lachica as class counsel in TVPA case). In addition to serving as class counsel in *Paguirigan* and investigating the claims in this action, Mr. Hawley has also litigated several other TVPA cases. (ECF No. 40-2 ("Hawley Decl.") ¶ 5.) In addition, Mr. Hawley and Mr. Lachica both speak Filipino dialects and have lived, worked, and studied in the Philippines. (*Id.* ¶¶ 4, 8; ECF No. 40-6 ("Lachica Decl.") ¶¶ 2, 4.) Moreover, Mr. Lachica has advised hundreds of Filipino citizens regarding immigration and employment rights in the United States. (Lachica Decl. ¶¶ 5-6.) Accordingly, the court concludes that the Nurse Plaintiffs' counsel are capable of fairly and adequately representing the interests of the class.

**CONCLUSION**

For the foregoing reasons, the Nurse Plaintiffs' motion for class certification is GRANTED.  The court hereby certifies a class of all Filipino nurses who were employed by Defendants at any time since April 5, 2011 pursuant to an employment contract containing a liquidated damages provision, non-compete clause, immigration notification provision, and a prevailing wage requirement.  The Nurse Plaintiffs' counsel, Mr. John J.P. Hawley, Esq. and Mr. Leandro B. Lachica, Esq., are APPOINTED as co-lead class counsel pursuant to Rule 23(g).

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:    Brooklyn, New York
          May 25, 2022