UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARY GRACE MAGTOLES, AIRA C. TAN,
ANA MYRENE ESPINOSA, and ANA MERVINE    :        1:21 Civ. 01850 (PK)
ESPINOSA, individually and on behalf of all others
similarly situated,                      :

                        Plaintiffs,      :

                -vs-                     :

UNITED STAFFING REGISTRY, INC. d/b/a     :
United Home Care, and BENJAMIN H. SANTOS,
                                         :
                        Defendants.
----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS**

THE HOWLEY LAW FIRM P.C.
John J.P. Howley
Leandro B. Lachica
1345 Avenue of the Americas, 2nd Floor
New York, New York  10105
(212) 601-2728
*Attorneys for the Plaintiff Class*

## TABLE OF CONTENTS

Preliminary Statement………………………………………………………………………..1

Statement of Facts………………………………………………………………………..…..2

    A.  Factual and Procedural Background………………………………………..…..2

        1.  The Liquidated Damages and Non-Compete Clauses………………………..3

        2.  Payment of Prevailing Wage Rates Required by the Contracts………………..…3

        3.  The Trafficking Victims Protection Act ("TVPA") Claims…………………….…4

        4.  Personal Liability of the Individual Defendant………………………………….4

    B.  The Mediation and Settlement Agreement………………………………………..4

    C.  The Notice of Proposed Settlement to the Class………………………………….7

    D.  The Absence of Objections……………………………………………………….8

Argument………………………………………………………………………………..…..8

Point I
Final Approval of the Settlement is Appropriate
Because the Settlement Terms Are Fair, Reasonable, and Adequate…………………………..8

    A.  The Scope of Discovery Preceding Settlement………………………………..…..9

    B.  The Likely Result of Litigation Compared to the Settlement, the Risks of Litigation
       for All Parties, and the Ability of the Defendants to Satisfy a Greater Judgment………..9

    C.  The Complexity, Expense, and Likely Duration of the Underlying Litigation……..…..10

    D.  The Cy Pres Payments………………………………………………………..11

    E.  The Named Plaintiffs' Incentive or Service Awards……………………………..12

    F.  The Reaction of the Class to the Settlement……………………………………..14

Point II
Class Counsel's Request for an Award of
Attorneys' Fees and Costs Should be Granted…………………………………………..…..14

    A.  The Proposed Award is Reasonable Under the Lodestar Method………………..15

1. Reasonable Hourly Rates……………………………………………………...…..15

    a. John J.P. Howley……………………………………………………………..17

    b. Leandro B. Lachica……………………………………………………….20

2. Reasonable Number of Hours Required by the Case……………………….…..21

3. Reasonable Costs and Expenses……………………………………………..22

B. The Proposed Award is Reasonable Under the Percentage-of-the-Fund Method………..23

Conclusion………………………………………………………………………...…..24

## TABLE OF AUTHORITIES

In re Agent Orange Prod. Liab. Litig., 818 F.2d 179 (2d Cir. 1987)……………..………………12

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
522 F.3d 182 (2d Cir. 2008)……………………………………………………………………...16

Barbour v. City of White Plains, 788 F. Supp. 2d 216 (S.D.N.Y. 2011)…………………….....21

Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174 (E.D.N.Y. 1999)……………….…....23

Bodon v. Domino's Pizza, LLC, 09 Civ. 2941, 2015 WL 3889577 (E.D.N.Y. June 4, 2015),
report and recommendation adopted, 2015 WL 3902405 (E.D.N.Y. June 24, 2015)………..…..16

Bosoro v. Am. Comp. Healthcare Med. Grp., 14 Civ. 1099, 2015 WL 5676679
(E.D.N.Y. Aug. 31, 2015), report and recommendation adopted,
2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015)……………………………………………….…..16

Campos v. BKUK 3 Corp., 18 Civ. 7507, 2021 WL 3540243 (S.D.N.Y. Aug. 10, 2021),
report and recommendation adopted by, 2021 WL 3863266 (S.D.N.Y. Aug. 30, 2021)……..…19

Capsolas v. Pasta Resources Inc., 10 Civ. 5595,
2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012)…………………………………………………..…13

Coakley v. Webb, 14 Civ. 8438, 2016 WL 1047079 (S.D.N.Y. Mar. 9, 2016)………………....17

In re Crazy Eddie Sec. Litig., 824 F. Supp. 320 (E.D.N.Y. 1993)……………………....…..…23

In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992)………………….…..9

In re EVCI Career Colls. Holding Corp. Sec. Litig., 05 Civ. 10240,
2007 WL 2230177 (S.D.N.Y. July 27, 2007)…………………………………………………....8

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005)……………………….…..8, 12

Fresno County Employees' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.,
925 F.3d 63 (2d Cir.), cert. denied, 140 S. Ct. 385 (2019)………………………….…..14-15, 17, 24

Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000)………………………...15

Griffin v. Astro Moving & Storage Co. Inc., 11 Civ. 1844,
2015 WL 1476415 (E.D.N.Y. Mar. 31, 2015)………………………………………….…..16

Hall v. ProSource Techs., LLC, 14 Civ. 2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)…...16

In re Holocaust Victim Assets Litig., 424 F.3d 158 (2d Cir. 2005)……………………....…...12

Hui Luo v. L&S Acupuncture, P.C., 14 Civ. 1003, 2015 WL 1954468
(E.D.N.Y. Apr. 29, 2015), aff'd, 2016 WL 2848646 (2d Cir. May 16, 2016)……………….15-16

Javier v. Beck, 13 Civ. 2926 (WHP), 2014 WL 3058456 (S.D.N.Y. July 3, 2015)…………..17-18

Javier H. v. Garcia-Botello, 239 F.R.D. 342 (W.D.N.Y. 2006)……………………………..…..17-18

Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131 (E.D.N.Y. 2013)…………………………..15

Khait v. Whirlpool Corp., 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y Jan. 20, 2010)……..…..14

Kindle v. Dejana, 308 F. Supp. 3d 698 (E.D.N.Y. 2018)……………………………………..…..13

Klein v. PDG Remediation, Inc., 95 Civ. 4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999)…..…23

LeBlanc-Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998)……………………………...…..22

Leser v. U.S. Bank N.A., 09 Civ. 2362, 2013 WL 1952306 (E.D.N.Y. May 10, 2013)……..…..16

Lovaglio v. W & E Hospitality, Inc., 10 Civ. 7351,
2012 WL 2775019 (S.D.N.Y Jul. 5, 2012)………………………………………………..…..14

Macolor v. Libiran, 14 Civ. 4555, 2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016), report
and recommendation adopted by, 2016 WL 1453039 (S.D.N.Y. Apr. 13, 2016)………...17-18, 20

McReynolds v. Sodexho Marriott Servs. Inc., 01 Civ. 0510 (ESH) (D.D.C.)…………………..18

In re Medical X–Ray Film Antitrust Litig., 93 Civ. 5904,
1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)…………………………………………………..…..23

In re MetLife Demutualization Litig., 689 F. Supp. 2d 297 (E.D.N.Y. 2010)………………..12

Millea v. Metro–North R. Co., 658 F.3d 154 (2d Cir. 2011)……………………………………..15

Paguirigan v. Prompt Nursing Empl. Agency, LLC, 18 Civ. 2833,
2018 WL 9739271 (2d Cir. Dec. 18, 2018)…………………………………………………..17-18

Paguirigan v. Prompt Nursing Empl. Agency LLC, 17 Civ. 1302 (NG),
2022 WL 6564755 (E.D.N.Y. Apr. 7, 2022)………………………………….…13, 16, 19, 21-22

Perdue v. Kenny A., 559 U.S. 542 (2010)……………………………………………………..…..17

Permanent Mission of India to the United Nations v. City of New York,
551 U.S. 193 (2007)……………………………………………………………………………..…..19

Reyes v. Altamarea Group, 10 Civ. 6451,
2011 WL 4599822 (S.D.N.Y Aug. 16, 2011)……………………………………………...…14

Roberts v. Texaco Inc., 94 Civ. 2015 (CLB) (S.D.N.Y.)………………………………...…18

Rosales v. Hispanic Employee Leasing Prog., LLC, 06 Civ. 0877,
2008 WL 5083507 (W.D. Mich. Nov. 26, 2008)…………………………………….…..10

Schneider v. Citicorp Mortg., Inc., 324 F. Supp. 2d 372 (E.D.N.Y. 2004)………………..…..22

Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 06 Civ. 1842 (NG),
2014 WL 12829910 (E.D.N.Y. Aug. 1, 2014)……………………………………..…..15, 22-23

Toure v. Amerigroup Corp., 10 Civ. 5391,
2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)……………………………………………..14

United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents,
856 F. Supp. 2d 484 (E.D.N.Y. 2012)……………………………………………...…..16

In re Warner Communications Sec. Litig., 798 F.2d 35 (2d Cir. 1986)……………………..…9

Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983)……...8-9

**MEMORANDUM OF LAW IN SUPPORT OF CONSENT MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS**

Plaintiffs Mary Grace Magtoles, Aira C. Tan, Ana Myrene Espinosa, and Ana Mervine Espinosa request final approval of a settlement of this class action resolving all claims, counterclaims, and defenses on the terms and conditions set forth in the parties' Settlement Agreement and Release (the "Settlement Agreement") that this Court has preliminarily approved [ECF 78], and approval of the amount of class counsel's attorneys' fees and costs.  Defendants United Staffing Registry, Inc. and Benjamin H. Santos do not oppose this motion.

### Preliminary Statement

On December 29, 2023, this Court granted preliminary approval of the Settlement Agreement and approved a proposed Notice of Settlement to be mailed to each class member at their last known address via First Class Mail.  [ECF 78].  The Court approved a 45-day deadline from the mailing of the Notice of Settlement for any class member to file any objections to the proposed settlement.  *Id.*  On January 2, 2024, class counsel mailed the approved Notice of Settlement to all class members who did not opt out of the class.  Howley Decl. ¶ 8.  The deadline for objections to the proposed class settlement was February 16, 2024.  As of today, February 26, 2024, class counsel has not received any objections.  *Id*. ¶¶ 8-9.

One class member, Justina Lapradez-Elrod, contacted class counsel to point out that her name and settlement amount were not listed on Schedule A of the Settlement Agreement.  *Id*. ¶ 10.  Class counsel verified that a payment of $10,160.00 should have been included for her on Schedule A.  *Id.*  Including that payment will not affect the payments of any other class member or the total amount of the defendants' settlement payment.  *Id.*  This motion, therefore, seeks

approval of the Settlement Agreement with the addition of the $10,160.00 payment to Ms. Lapradez-Elrod.

As described more fully below, final approval of the settlement is appropriate because the settlement terms are fair, reasonable, and adequate. Approval of the amounts of attorneys' fees and costs to be paid to class counsel is also appropriate both under a lodestar analysis and as a percentage of the total settlement amount.

<u>**Statement of Facts**</u>

**A. Factual and Procedural Background**

On April 6, 2021, the named plaintiffs filed a class action complaint alleging claims against defendants United Staffing Registry, Inc. and Benjamin H. Santos for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, *et seq.*, and for breach of contract, fraud, and unjust enrichment under New York law. [ECF 1].

On May 25, 2022, U.S. District Judge Kiyo A. Matsumoto certified a class comprised of "all Filipino nurses who were employed by Defendants at any time since April 5, 2011 pursuant to an employment contract containing a liquidated damages provision, non-compete clause, immigration notification provision, and a prevailing wage requirement" (the "Standard Contract") and appointing John J.P. Howley and Leandro B. Lachica as class counsel. [ECF 47].

On June 27, 2022, Judge Matsumoto entered an Order approving a Notice of Class Action to members of the class. [ECF 52]. The Notice of Class Action informed potential class members that they "will be bound by any judgment or settlement that may be obtained by the Plaintiffs" unless they exercised their right to opt out of the class by a September 20, 2022 deadline. [ECF 52].

On October 6, 2022, class counsel filed a declaration stating that the Notice of Class Action was mailed to 298 potential class members identified during discovery and providing the Court with notices from 27 individuals who chose to opt out of the class.  [ECF 63].

The parties engaged in extensive, class-wide discovery, including the production, review and analysis of employment contracts, immigration files, personnel files, time records, emails, memoranda, other communications, and spreadsheets containing 23,194 lines and 27 columns of detailed payroll records.  Depositions were taken of the four named plaintiffs, the individual and corporate defendants, the corporate defendant's human resources manager, its financial controller, and four class members selected by the defendants.  Howley Decl. ¶¶ 2-3, 7.

On March 30, 2023, Judge Matsumoto granted summary judgment in favor of plaintiffs on issues of liability.  [ECF 68].

### 1.   The Liquidated Damages and Non-Compete Clauses

The Standard Contract contains a "liquidated damages" clause stating that a nurse who does not complete 6,000 hours of billable work owes defendant United Staffing $15.00 for each hour or part of an hour not completed.  The Standard Contract also provides that a nurse who fails to complete 6,000 hours of work will be prohibited from practicing nursing anywhere in the United States for a period of three years.  Mem. & Order, at 6-8 [ECF 68].

Judge Matsumoto ruled that the "liquidated damages" and non-compete clauses are unenforceable.  *Id.* at 14-38.  She entered a permanent injunction prohibiting the defendants from enforcing or attempting to enforce either provision.  *Id.* at 74.

### 2.   Payment of Prevailing Wage Rates Required by the Contracts

The Standard Contract requires the defendants to pay nurses the prevailing wage established by the U.S. Department of Labor for the geographic area where the nurses are

assigned to work.  Judge Matsumoto ruled that the defendants breached the plaintiffs' contracts by not paying the applicable prevailing wage rates for all the hours they worked.  *Id*. at 8, 45-48.

### 3.  The Trafficking Victims Protection Act ("TVPA") Claims

The TVPA provides a private right of action for damages against those who knowingly provide or obtain the labor or services of a person by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person would suffer serious harm.  18 U.S.C. § 1589(a); *see also* 18 U.S.C. § 1595.

The term "serious harm" includes "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2).

Judge Matsumoto found that the defendants violated the TVPA because the contract termination penalty and the nationwide, three-year non-compete clause constituted threats of serious harm as defined by the TVPA.  Mem. & Order, at 61-72 [ECF 68].

### 4.  Personal Liability of the Individual Defendant

Judge Matsumoto pierced the corporate veil to hold defendant Benjamin Santos personally liable for breach of contract.  Mem. & Order, at 75 [ECF 68].

### B.  The Mediation and Settlement Agreement

On April 5, 2023, all parties consented to the jurisdiction of Magistrate Judge Peggy Kuo over all remaining issues in the action.  [ECF 70].  On April 6, 2023, Judge Kuo granted the parties' joint request for referral to the Court's mediation program.  [ECF 71].  The parties

jointly selected Michael Starr, an experienced labor and employment mediator, to serve as their mediator.  Howley Decl. ¶ 4.

In advance of the mediation, the parties exchanged detailed spreadsheets setting forth their respective damage calculations.  The spreadsheets compared the week-by-week payroll data that defendants had produced during discovery with the corresponding time records produced by defendants and the prevailing wage rates published by the U.S. Department of Labor.   Plaintiffs also provided defendants with a spreadsheet identifying class members who claimed to have paid "liquidated damages" to the defendants.  *Id*. ¶ 5.

Both sides provided the mediator with their spreadsheets and confidential pre-mediation statements.  The mediator spoke separately with the attorneys for each side in advance of the mediation.  The parties and their attorneys then participated in two, full-day mediation sessions with the mediator.  *Id*. ¶ 6.

On September 29, 2023, the parties executed a formal Settlement Agreement and Release resolving all claims and counterclaims alleged in this action subject to the Court's approval.  Defendants agreed to pay a total of a total of One Million Six Hundred Forty-Nine Thousand Four Hundred and Eighty-Three Dollars and Fifty-One Cents ($1,649,483.51) (the "Settlement Amount"), inclusive of attorneys' fees and costs.  Settlement Agreement ¶ 1 [ECF 77-3].

The Settlement Amount will be distributed as follows:

1.  Each class member will receive as compensatory damages the full amounts of underpayments of prevailing wages, plus 9% annual interest.  A schedule listing the amounts of compensatory damages and interest to be paid to each class member for wage underpayments is annexed to the Settlement Agreement as Schedule A.  *Id.*

2. Each class member who paid "liquidated damages" to the defendants will receive a refund equal to 100% of the amounts they paid plus 9% annual interest. A schedule listing the amounts of refunds and interest to be paid to each class member is annexed to the Settlement Agreement as Schedule A. *Id.*

3. Defendants will donate $100,000.00 each to the Philippine Nurses Association of America, the Philippine Nurses Association of New York, and the Philippine Nurses Association of New Jersey as *cy pres* payments to resolve the claims of class members who cannot be identified. *Id.*

4. Each named plaintiff will receive an incentive or service award of $10,000.00 for serving as class representative. *Id*.

5. Class counsel will be paid attorneys' fees and reimbursed for out-of-pocket costs in an amount not to exceed $500,000.00 to be approved by the Court. *Id.*

The Settlement Amount payable to individual class members and their attorneys will be paid no later than twenty-one (21) days after this Court enters an Order granting final approval of the settlement. *Id.* ¶ 14. The *cy pres* donations will be paid to the three non-profit organizations no later than thirty (30) days thereafter. *Id*.

The Settlement Agreement contains mutual releases. Each class member agrees to release and waive all claims for damages, salaries, wages, compensation, overtime compensation, monetary relief, and any other benefits of any kind, earnings, back pay, liquidated and other damages, interest, attorneys' fees and costs related to her or his employment, association, recruitment, training or otherwise in any manner by or with any of the defendants that were raised, or could have been raised, pursuant to the TVPA or any other law or statute, whether in law or equity, as well as any claims actually raised in this lawsuit. *Id.* ¶ 5.

Defendants agree to release and waive all claims for damages against each class member for breach of any employment contract, including without limitation any claim for liquidated damages. *Id.* ¶ 7.

The release of claims does not prevent any class member from participating in any investigation or proceeding conducted by the United States Equal Employment Opportunity Commission, National Labor Relations Board, or any other governmental agency charged with enforcement of any law. *Id.* ¶ 6.

**C. The Notice of Proposed Settlement to the Class**

On December 29, 2023, this Court granted preliminary approval of the settlement and approval of a proposed Notice of Settlement to be mailed to each class member at their last known address via First Class Mail. [ECF 78]. The Court approved a 45-day deadline from the mailing of the Notice of Settlement for any class member to file any objections to the proposed settlement. *Id.*

In the event that a Notice of Settlement was returned by the United States Postal Service with an updated address, class counsel was required to re-mail the Notice to that updated address within two (2) days. In the event that a Notice of Settlement was returned by the United States Postal Service with no forwarding address, class counsel was required to perform one (1) standard skip trace within five (5) days of the returned Notice in an effort to ascertain the updated address for the class member in question. If an updated address was ascertained, class counsel was required to re-mail the Notice of Settlement to that updated address within two (2) days thereafter. [*Id.*]

On January 2, 2024, class counsel mailed the approved Notice of Settlement to all class members who did not opt out of the class. Howley Decl. ¶ 8. Six notices were returned by the

Post Office as undeliverable.  *Id.*  In each instance except one, class counsel was able to obtain

an updated address and re-mail the notice on the same day that the original notice was returned

by the Post Office.  *Id.*  In the one instance where an updated mailing address was not found,

class counsel was able to confirm a current email address, and the Notice of Settlement was

emailed to that class member the same day.  *Id.*

### D.  The Absence of Objections

The deadline for objections to the proposed class settlement was February 16, 2024.  As

of today, February 26, 2024, class counsel has not received any objections.  Howley Decl. ¶ 9.

<u>Argument</u>

Point I

**Final Approval of the Settlement is Appropriate
Because the Settlement Terms Are Fair, Reasonable, and Adequate**

"The central question raised by the proposed settlement of a class action is whether the

compromise is fair, reasonable and adequate."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

1982), *cert. denied,* 464 U.S. 818 (1983).  "Fairness is determined upon review of both the terms

of the settlement agreement and the negotiating process that led to such agreement."  *Frank v.

Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "Absent fraud or collusion, [courts]

should be hesitant to substitute [their] judgment for that of the parties who negotiated the

settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL

2230177, at *4 (S.D.N.Y. July 27, 2007).

Guidelines for evaluating whether the settlement is fair and the class members' interests

adequately protected are well established in this Circuit.  They include the scope of discovery

preceding settlement; the complexity, expense and likely duration of the underlying litigation;

the risks of litigation for all parties; comparison of the proposed settlement with the likely result

of litigation; the ability of the defendants to satisfy a greater judgment; and the reaction of the

class to the settlement.  *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d

Cir. 1992) (citing *Weinberger*, 698 F.2d at 73–74); *In re Warner Communications Sec. Litig.*,

798 F.2d 35, 37 (2d Cir. 1986)).

## A.  The Scope of Discovery Preceding Settlement

The parties, their attorneys, and this Court have an extensive record upon which to

evaluate the fairness, reasonableness, and adequacy of the settlement.  The defendants produced,

and class counsel reviewed, class-wide employment contracts, timesheets, payroll records,

immigration filings, correspondence, and emails.  A motion to dismiss, multiple discovery

motions, and a motion for summary judgment on liability fleshed out the issues for both the

parties and the Court.  Howley Decl. ¶¶ 2-3, 7.

## B.  The Likely Result of Litigation Compared to the Settlement, the Risks of Litigation for All Parties, and the Ability of the Defendants to Satisfy a Greater Judgment

The Settlement Agreement provides each class member with 100% of the compensatory

damages they could possibly win at trial for underpayments of prevailing wages and 100%

reimbursement of liquidated damages payments, plus 9% annual interest.  The only other

damages to be determined at trial would be punitive damages.  The possibility of a large punitive

damages award, however, is at best uncertain.  Plaintiffs do not allege that defendants took

possession of passports, physically abused or threatened anyone with violence, or restrained

anyone physically.  Under these circumstances, class members might not recover more than the

Settlement Amount after a damages trial.

There is a possibility that class members would recover less than the Settlement Amount

if this case proceeded to trial and appeals.  Given the limited number of appellate precedents

interpreting the TVPA, the outcome of appeals is difficult to predict.  Defendants would also

argue on appeal that, under the immigration laws, they were not required to pay the prevailing wage that was in effect at all times during the nurses' employment, but only the prevailing wage that was in effect at the time the first immigration petition was filed. *See Rosales v. Hispanic Employee Leasing Prog., LLC*, 06 Civ. 0877, 2008 WL 5083507 (W.D. Mich. Nov. 26, 2008). While plaintiffs believe that Judge Matsumoto correctly determined that, as a matter of contract law, defendants were required to pay the current prevailing wage at all times, an appellate ruling to the contrary could eliminate approximately half of the compensatory damages that will be paid under the Settlement Agreement.

There is also a risk that the class would be unable to collect the full amount of a final judgment. The corporate defendant is an employment agency without any meaningful assets, and it is owned by one individual. At a minimum, it could take many months or years to locate assets and enforce a judgment against them.

## C. The Complexity, Expense, and Likely Duration of the Underlying Litigation

A trial on damages and appeals from a final judgment would take a significant amount of time and, as noted above, could result in a less favorable outcome than provided for in the Settlement Agreement. A trial on damages and appeals from a final judgment would not necessarily end the litigation. Having determined that plaintiffs established defendants' liability under the TVPA because the contract termination penalty and nationwide non-compete clauses constituted threats of "serious harm" in violation of 18 U.S.C. § 1589(a)(2), there was no need for Judge Matsumoto to decide whether plaintiffs also established liability based on the threat of deportation and/or under the "abuse of law" provisions in 18 U.S.C. § 1589(a)(3). If defendants were successful on an appeal from a final judgment after a jury trial on damages, therefore, it might not end the litigation. The result could be a remand and several more years of litigation.

The proposed settlement guarantees class members immediate relief and all parties finality after more than three years of litigation.  Were the action to continue to be litigated, even if the class claims were ultimately successful, class members could wait years before collecting any compensation.

In sum, the attorneys for both sides had full information about the strengths and weaknesses of the claims, counterclaims and defenses, as well as the risks of further litigation. The case was vigorously litigated by experienced attorneys for all parties, and the resulting settlement was reached after arms-length negotiations between the attorneys with the assistance of an experienced labor and employment mediator.  The settlement terms are fair and reasonable considering the likely outcome of a trial and appeals.

## D.  The *Cy Pres* Payments

The class period in this action dates back to April 5, 2011, because the TVPA has a 10-year statute of limitations.  18 U.S.C. § 1595(c).  Due to the passage of time and a flood at the defendants' offices in 2016, the parties have been unable to identify an unknown number of class members who were employed by the defendants during the early part of the class period.  The existence of this lawsuit has been well-known among the Filipino-American community during the past three years of litigation.  It is unlikely, therefore, that nurses who were employed more than six years ago would come forward with claims at this time.  In addition, any nurses who were employed more than six years before the commencement of this lawsuit would not be able to recover any breach of contract damages.  Their claims would be limited to the TVPA.

In this case, the Settlement Agreement provides for *cy pres* payments of $100,000 each to three established, non-profit organizations that provide immigration, legal, and other assistance to nurses from the Philippines.  The three organizations are:  Philippine Nurses Association of

11

America, Philippine Nurses Association of New York, and Philippine Nurses Association of New Jersey.[1]  The Second Circuit has held that such payments are appropriate when used to fund "class assistance programs that are consistent with the nature of the underlying action and with the judicial function."  *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 167 (2d Cir. 2005) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 186 (2d Cir. 1987)).

### E.  The Named Plaintiffs' Incentive or Service Awards

The Settlement Agreement provides for an incentive or service award of $10,000 to each of the named plaintiffs.  When examining the reasonableness of a requested incentive or service award, courts consider:  (1) the existence of special circumstances, including the personal risk incurred by the named plaintiffs; (2) the time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights.  *Frank*, 228 F.R.D. at 187.

Each of the named plaintiffs took substantial personal risks by pursuing this lawsuit on behalf of the class.  As a general matter, courts acknowledge that a named plaintiff, "by lending [her or] his name to the litigation, [she or] he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."  *Frank,* 228 F.R.D. at 187; *accord In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 369 (E.D.N.Y. 2010) ("the named plaintiffs will often be entitled to a substantially greater award than other members of the class," particularly in employment class actions).  In this case, the named plaintiffs took on

---

[1] Each of the organizations is registered with the IRS as a non-profit organization and has a history of protecting the rights of Filipino nurses in the United States.  *See, e.g.,* https://mypnaa.org/ (last visited on 02/26/2024); https://www.pnanewyork.org/home (last visited on 02/26/2024); https://www.pnanj.org/ (last visited on 02/26/2024).

the actual risk of counterclaims that the defendants asserted against them to enforce the liquidated damages clause in their contracts.

Each of the named plaintiffs expended significant time and effort to assist in the prosecution of this lawsuit on behalf of the class. Each of them worked diligently with class counsel over the past three years, including by meeting and speaking with class counsel on a regular basis, communicating with class members, and helping to gather evidence. Each of the named plaintiffs also took significant time off from work to prepare for their depositions, give deposition testimony for a full day each, prepare for mediation, and participate in two full days of mediation. Howley Decl. ¶ 3.

The named plaintiffs vindicated important legal rights and recovered significant compensation for class members. As a result of the named plaintiffs' efforts, all class members – and all current and future employees of the defendants – will be paid the proper wages and will no longer feel threatened by a large liquidated damages claim or a three-year, nationwide non-compete clause. In addition, class members who were not paid the proper prevailing wage rates will be paid 100% of the underpayments plus 9% annual interest, and class members who paid liquidated damages will receive reimbursement of 100% of the amount they paid plus 9% annual interest.

The proposed $10,000 incentive or service award to each class representative is within the range of awards approved by courts in this Circuit under similar circumstances. *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302 (NG), 2022 WL 6564755, at *7 (E.D.N.Y. Apr. 7, 2022) (approving $10,000 award); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (approving $10,000 award); *Capsolas v. Pasta Resources Inc.*, 10 Civ. 5595, 2012 WL 4760910, at *9, (S.D.N.Y. Oct. 5, 2012) (approving awards of $20,000 and $10,000);

*Toure v. Amerigroup Corp.*, 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012)

(approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*,

10 Civ. 7351, 2012 WL 2775019, *4 (S.D.N.Y Jul. 5, 2012) (approving $10,000 awards); *Reyes*

*v. Altamarea Group*, 10 Civ. 6451, 2011 WL 4599822, *9 (S.D.N.Y Aug. 16, 2011) (approving

$15,000 awards); *Khait v. Whirlpool Corp.*, 06 Civ. 6381, 2010 WL 2025106, *9 (E.D.N.Y Jan.

20, 2010) (approving $15,000 and $10,000 awards).

### F.  The Reaction of the Class to the Settlement

No objections to the settlement have been received from any class members.  Howley

Decl. ¶ 9.  One class member, Justina Lapradez-Elrod, contacted class counsel to point out that

her name and settlement amount were not listed on Schedule A of the Settlement Agreement.  *Id*.

¶ 10.  Class counsel verified that a payment of $10,160.00 should have been included for Ms.

Lapradez-Elrod on Schedule A.  *Id.*  While including that payment will affect the amount

available for class counsel's attorneys' fees and costs, it will not affect the payments to any other

class member or the total amount of the defendants' settlement payment.  *Id*.  This motion,

therefore, seeks approval of the Settlement Agreement with the addition of the $10,160.00

payment to Ms. Lapradez-Elrod.

### Point II

### Class Counsel's Request for an Award of
### Attorneys' Fees and Costs Should be Granted

Defendants have agreed to pay $1,649,483.51 to settle all claims under federal and state

law, including claims for attorneys' fees and costs.  This Court has discretion to calculate

reasonable attorneys' fees using either the lodestar method or a percentage-of-the-fund method.

*See, e.g., Fresno County Employees' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68

14

(2d Cir.), *cert. denied*, 140 S. Ct. 385 (2019); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 06 Civ. 1842 (NG), 2014 WL 12829910, at *6 (E.D.N.Y. Aug. 1, 2014).

Class counsel request approval of $489,840.00 in attorneys' fees and costs based on their contemporaneous time records and actual out-of-pocket expenses. The total amount of attorneys' fees and costs requested is less than the lodestar amount and within the range of percentages usually approved by courts in this District.

### A. The Proposed Award is Reasonable Under the Lodestar Method

Under the lodestar method, a court ascertains the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. *See, e.g., Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). When deciding what is "reasonable" and "appropriate," a court considers "'traditional criteria,' including '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Shady Grove*, 2014 WL 12829910, at *6 (quoting *Goldberger*, 209 F.3d at 50) (alteration in original)). The resulting lodestar "creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

### 1. Reasonable Hourly Rates

Courts in the Second Circuit adhere to the forum rule, "which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (citations omitted).

In the Eastern District of New York, prevailing rates range from $300 to $450 per hour for experienced lawyers in relatively routine cases. *See, e.g., Hui Luo v. L&S Acupuncture, P.C.*,

14 Civ. 1003, 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015), *aff'd*, 2016 WL 2848646 (2d Cir. May 16, 2016); *Hall v. ProSource Techs., LLC*, 14 Civ. 2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (awarding $450 per hour for lawyer with 12 years of experience in FLSA wage and hour lawsuits); *Bosoro v. Am. Comp. Healthcare Med. Grp.*, 14 Civ. 1099, 2015 WL 5676679, at *9 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015) ("prevailing hourly rates in the Eastern District of New York [are] between $350 and $400 for law firm partners"); *Bodon v. Domino's Pizza, LLC*, 09 Civ. 2941, 2015 WL 3889577, at *8 (E.D.N.Y. June 4, 2015), *report and recommendation adopted*, 2015 WL 3902405 (E.D.N.Y. June 24, 2015) ("recent cases have held that partners in wage and hour cases are generally entitled to recover $300 to $450 per hour"); *Griffin v. Astro Moving & Storage Co. Inc.*, 11 Civ. 1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (awarding $400 per hour); *Leser v. U.S. Bank N.A.*, 09 Civ. 2362, 2013 WL 1952306, at *10 (E.D.N.Y. May 10, 2013) (awarding $425 per hour).

"In determining whether an hourly rate is reasonable, courts must take into account 'the nature of representation and type of work involved in a case.'" *Bodon*, 2015 WL 3889577, at *8 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 n.2 (2d Cir. 2008)). Accordingly, courts sometimes award higher rates when warranted by an attorneys' experience, the complexity of the case, and other factors. *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency LLC,* 17 Civ. 1302 (NG), 2022 WL 6564755, at *7 (E.D.N.Y. Apr. 7, 2022) (awarding $550 per hour for Mr. Howley and $450 per hour for Mr. Lachica in TVPA class action); *United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 494 (E.D.N.Y. 2012) (awarding $600 per hour for law firm partner);

*Coakley v. Webb*, 14 Civ. 8438, 2016 WL 1047079, at \*4–6 (S.D.N.Y. Mar. 9, 2016) (awarding $575 per hour in civil rights action).

The goal "is to provide 'a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case.'" *Fresno County,* 925 F.3d at 67 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

Very few lawyers have demonstrated a willingness to represent plaintiffs in civil actions under the TVPA, let alone pursue them on a contingency fee basis. In fact, most of the relevant TVPA precedents in this Circuit were established in cases brought by the class counsel in this lawsuit. *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency, LLC,* 18 Civ. 2833, 2018 WL 9739271 (2d Cir. Dec. 18, 2018); *Macolor v. Libiran*, 14 Civ. 4555, 2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016); *Javier v. Beck*, 13 Civ. 2926 (WHP), 2014 WL 3058456 (S.D.N.Y. July 3, 2015); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342 (W.D.N.Y. 2006).

This case presented factually novel and legally challenging questions which required more than average legal skill to address properly. Representing and communicating with class members also required an understanding of the language and culture of recent immigrants from the Philippines who were not familiar with the U.S. legal system and who were afraid of losing their professional licenses and legal immigration status in this country. Class counsel were uniquely qualified in all respects.

### a. John J.P. Howley

John J.P. Howley is an experienced litigation attorney whose complex litigation practice spans more than thirty years. He graduated from Skidmore College in 1980 with a B.A. in Government and History. After graduation, he worked as a registered lobbyist for the Commission on Independent Colleges and Universities in Albany, New York. He graduated

from New York Law School *magna cum laude* in 1989.  During law school, he was Articles

Editor of the Law Review, an intern to U.S. District Judge Kevin Thomas Duffy, and a research

assistant to former U.S. Magistrate Judge (later U.S. District Judge) Shira A. Scheindlin.

Howley Decl. ¶ 11.

After graduating from law school, Mr. Howley served as a law clerk to U.S. Circuit

Judge Roger J. Miner on the U.S. Court of Appeals for the Second Circuit.  He joined Kaye

Scholer LLP (now known as Arnold & Porter Kaye Scholer) as a litigation associate in 1990 and

was elected to the partnership in 1997.  He represented Kaye Scholer clients in complex labor

and employment litigation, including as plaintiffs' attorney in *McReynolds v. Sodexho Marriott*

*Servs. Inc.*, 01 Civ. 0510 (ESH) (D.D.C.), a race discrimination class action that settled for $80

million, and as defendants' attorney in *Roberts v. Texaco Inc.*, 94 Civ. 2015 (CLB) (S.D.N.Y.), a

race discrimination class action that settled for $115 million.  He also served as Chair of the

firm's Pro Bono Committee.  *Id*. ¶ 12.

In 2012, Mr. Howley opened his own law firm to represent plaintiffs in labor,

employment, and whistleblower litigation.  His significant cases include several precedent-

setting lawsuits under the TVPA, including:  *Paguirigan v. Prompt Nursing Empl. Agency, LLC,*

18 Civ. 2833, 2018 WL 9739271 (2d Cir. Dec. 18, 2018); *Macolor v. Libiran,* 14 Civ. 4555,

2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016)*; Javier v. Beck,* 13 Civ. 2926 (WHP), 2014 WL

3058456 (S.D.N.Y. July 3, 2015)*; Javier H. v. Garcia-Botello,* 239 F.R.D. 342 (W.D.N.Y.

2006)*.*  He regularly represents the Police Benevolent Association of the City of New York, Inc.

(PBA) in labor and employment matters, including litigation related to collective bargaining

disputes with the City of New York.  *Id*. ¶ 13.

Mr. Howley has argued numerous appeals in the U.S. Court of Appeals for the Second Circuit. He has also argued in the U.S. Supreme Court on behalf of the Governments of India and Mongolia in *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193 (2007). *Id*. ¶ 14.

Mr. Howley's *pro bono* work has focused on representing death row inmates in *habeas corpus* and clemency petitions. He has won clemency for two death row inmates from two different Governors of Virginia, and he has won *habeas corpus* relief for death row inmates four times. He has also represented the Government of the United Kingdom as *amicus curiae* in capital murder cases involving United Kingdom nationals in the United States, including before the U.S. Supreme Court. He has Chaired the New York City Bar Association's Annual Habeas Corpus Training Seminar for Capital Post-Conviction Attorneys and has served as a Trustee of the Lawyers' Committee for Civil Rights Under Law in Washington, D.C. *Id*. ¶ 15.

Mr. Howley speaks Tagalog (Pilipino) and Cebuano (Bisaya), two Philippine dialects spoken by plaintiff and other class members. He is familiar with Philippine culture having studied in the southern Philippines in 1975-76, served as CEO of an energy services company in the Philippines from 2007 to 2012, and served as chairman of The Philippine American Chamber of Commerce, Inc. for 24 years. *Id*. ¶ 16.

Mr. Howley charges clients $550.00 per hour. In contingency fee cases, courts in this Circuit have awarded him between $500 and $550 per hour. *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency LLC,* 17 Civ. 1302 (NG), 2022 WL 6564755, at *7 (E.D.N.Y. Apr. 7, 2022) (*$550 per hour rate for Mr. Howley was reasonable in TVPA class action); *Campos v. BKUK 3 Corp.*, 18 Civ. 7507, 2021 WL 3540243, at *13 (S.D.N.Y. Aug. 10, 2021), *report and recommendation adopted by*, 2021 WL 3863266 (S.D.N.Y. Aug. 30, 2021) (awarding Mr.

Howley $550 per hour in an FLSA lawsuit); *Macolor v. Libiran*, 14 Civ. 4555, 2016 WL 1488121, at *7 (S.D.N.Y. Mar. 25, 2016), *report and recommendation adopted by*, 2016 WL 1453039 (S.D.N.Y. Apr. 13, 2016) (awarding Mr. Howley $500 per hour in a TVPA lawsuit).

### b.   Leandro B. Lachica

Leandro B. Lachica is an experienced employment and immigration attorney.  He earned his undergraduate and law degrees from the University of the Philippines, a Master of Business Administration (MBA) degree from Nanyang Technological University in Singapore, and a Graduate Diploma in Legal Practice from the Australian National University in Canberra, Australia.  He was admitted to practice law in the Philippines in 1998, in the State of New York in 2005, and in New South Wales, Australia in 2007.  Lachica Decl. ¶¶ 2-3.

Mr. Lachica began his legal career in the litigation department of the law firm of Manalo, Puno, Jocson & Placido in the Philippines.  In 2001, he joined the Philippine Foreign Service and became a career diplomat with the Philippine Department of Foreign Affairs.  He has served as Vice Consul and Third Secretary of the Philippine Embassy in Canberra, Australia, and as Consul of the Philippine Consulate General in New York City.  In both postings, he was responsible for providing employment and immigration legal assistance to Philippine citizens abroad.  *Id.* ¶¶ 4-6.

Mr. Lachica has advised hundreds of Philippine citizens on their employment and immigration rights in the United States, including their rights and responsibilities under immigrant and non-immigrant visas, minimum, overtime and prevailing wage issues, protections under U.S. labor and anti-trafficking laws, and disputes with foreign labor recruiters.  *Id*. ¶ 6.

Since January 1, 2015, Mr. Lachica has been of counsel to The Howley Law Firm in New York, where he represents clients in employment litigation and immigration matters.  His usual

billing rate is $450 per hour, which is within the range for an experienced attorney in

employment and civil rights cases.  *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency LLC,*

17 Civ. 1302 (NG), 2022 WL 6564755, at *7 (E.D.N.Y. Apr. 7, 2022) (awarding $450 per hour

for Mr. Lachica in TVPA class action).

### 2.  Reasonable Number of Hours Required by the Case

In evaluating whether an attorney's hours were reasonably expended, a court considers

"whether, at the time the work was performed, a reasonable attorney would have engaged in

similar time expenditures."  *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 222–23

(S.D.N.Y. 2011) (citations omitted).

In this case, class counsel faced a vigorous and tenacious defense.  The number of hours

required was dictated by that aggressive defense.  Class counsel investigated the facts,

interviewed class members, developed the legal theory behind this case, litigated multiple

discovery disputes, reviewed more than 15,000 documents produced by the defendants, took

depositions of the defendants, three of their key employees and four nurses they identified as

witnesses for the defense, prepared the four named plaintiffs for depositions, defended those

depositions, defeated defendants' motions to dismiss and for summary judgment, prevailed on

motions to certify a class and for summary judgment, defeated multiple attempts by the

defendants to reargue adverse decisions over a period of three years, and prepared for and

represented the class in two full-day mediation sessions.

Class counsel succeeded on all claims alleged in the complaint.  As a result, all class

members will be made whole for all wage underpayments plus 9% annual pre-judgment interest.

Class members who paid so-called "liquidated damages" to the defendants will receive full

refunds plus 9% annual pre-judgment interest.  The declaratory and injunctive relief awarded in

this case will protect class members and other foreign nurses from threats from these or other employers now and in the future.

Class counsel have submitted contemporaneous time records of their work on this case. *See* Howley Decl., Exh. A; Lachica Decl., Exh. C.  These detailed time records show that Mr. Howley spent 680.7 hours and Mr. Lachica spent 301.26 hours working on this lawsuit over the past three years.  The dollar value is $374,385.00 for Mr. Howley's time at his usual rate of $550.00 per hour and $135,567.00 for Mr. Lachica's time at his usual rate of $450 per hour, for a total of $509,952.00.  Class counsel considers legal assistants to be part of their overhead and do not bill separately for their time.  Howley Decl. ¶ 18.

Given the extensive discovery and analysis of documents required in this case, the number of motions and motions for reconsideration filed by the defendants, and class counsel's success on every claim and motion, the number of hours spent were reasonable.  *See, e.g., Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302 (NG), 2022 WL 6564755, at *7-*8 (E.D.N.Y. Apr. 7, 2022); Shady *Grove*, 2014 WL 12829910, at *6; *Schneider v. Citicorp Mortg., Inc.*, 324 F. Supp. 2d 372, 378 (E.D.N.Y. 2004).

### 3.  Reasonable Costs and Expenses

Courts generally award "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Attached to the accompanying Howley Declaration as Exhibit B is a schedule showing $5,588.40 in costs advanced by class counsel for court fees, process server and witness fees, transcripts, and mediator fees.  Class counsel respectfully submit that these costs are properly charged to the settlement because they are reasonable and would ordinarily have been charged to the client.  *See, e.g., id.*

The total lodestar for attorneys' fees and costs amounts to $515,540.40, which exceeds the total requested attorneys' fees and costs of $489,840.00.

**B.  The Proposed Award is Reasonable Under the Percentage-of-the-Fund Method**

Class counsel's request for attorneys' fees and costs equal to slightly less than 30% of the total settlement is within the range of awards in this Circuit.  *See, e.g., Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (approving 33% of common fund for attorneys' fees alone) (citing *Klein v. PDG Remediation, Inc.*, 95 Civ. 4954, 1999 WL 38179, at * 4 (S.D.N.Y. Jan. 28, 1999) (same)); *In re Medical X–Ray Film Antitrust Litig.*, 93 Civ. 5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (same); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8% of common fund for attorneys' fees alone).

Class counsel assumed the risk of not being paid anything for years of intense litigation. They took the risk – which soon became a reality – that the defendants would mount an aggressive defense thereby preventing class counsel from spending time on other matters.  These are relevant factors when considering an award of attorneys' fees as a percentage of a common fund.  *See, e.g., Fresno County,* 925 F.3d at 70; *Shady Grove*, 2014 WL 12829910, at *7.

Class counsel also assumed the risk that the case would not result in any recovery at all. While class counsel had some prior success at the District Court level in cases raising similar claims under the TVPA, there were no decisions by appellate courts holding that a liquidated damages clause in an employment contract may constitute a threat of serious harm under the TVPA.  There was also a significant issue of contract interpretation in this case.  Defendants identified case law holding that immigration laws sometimes allow an employer to pay the prevailing wage in effect at the time immigration petitions were first submitted to the government, even if the prevailing wage rate increased by the time the employee started

working.  In hindsight, the Court correctly held in this case that the contract language required payment of a higher prevailing wage in effect during the course of the nurses' employment.  At the time the complaint was filed, however, class counsel accepted the risk of an adverse ruling that could have resulted in a finding that the class suffered no damages after more than three years of litigation.  Under their contingency fee agreement with the named plaintiffs, class counsel would have been paid nothing in that event.

The Second Circuit has held that this type of "contingency risk" is properly considered under the common fund approach to awarding attorneys' fees and costs:

> "The plaintiff class is therefore appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases.  That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited by the risk she has assumed that the class's cause will be unsuccessful.  The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf."

*Fresno County,* 925 F.3d at 70.

## Conclusion

For all the foregoing reasons, plaintiffs respectfully request final approval of the proposed Settlement Agreement, including: (a) the payments to class members listed on Schedule A of the Settlement Agreement; (b) a payment of $10,160.00 to class member Justina Lapradez-Elrod who was inadvertently left off Schedule A; (c) a payment of $489,840.00 to class counsel for attorneys' fees and costs; and (d) such other relief as the Court deems just and

proper.

Dated: New York, New York
        February 26, 2024

Respectfully submitted,

THE HOWLEY LAW FIRM P.C.

*/s John J.P. Howley*

By:_____

      John J.P. Howley
      Leandro B. Lachica
1345 Avenue of the Americas, 2nd Floor
New York, New York  10105
(212) 601-2728
*Attorneys for the Plaintiff Class*